UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| ALLISON KING, on behalf of herself and all others similarly situated,<br><br>    Plaintiff,<br><br>  v.<br><br>BAYLOR UNIVERSITY,<br><br>    Defendant. | CASE NO. 6:20-cv-00504<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Allison King ("Ms. King" or "Plaintiff"), on behalf of herself and all others similarly situated, hereby bring this Class Action Complaint against Defendant Baylor University ("Baylor" or "Defendant"). Ms. King makes the following allegations based upon actual knowledge as to her own acts, and upon information and belief, including the investigation of her attorneys, as to all other matters.

**NATURE OF THE ACTION**

1. There is no question that classroom learning—and all of the experiences that come with on-campus education—is more valuable to the student than online learning. Students pay—and borrow—hundreds of thousands of dollars for the on-campus college experience because it provides the students the opportunity to engage directly with their professors, to meet and share experiences with diverse and accomplished individuals from around the world, to join student clubs, to build professional networks, and to experience the campus environment. Online learning offers none of these opportunities—and carries few of the massive expenses associated with live classroom learning. For these reasons, many students spend tens of thousands of dollars on private colleges and universities that afford the opportunity for in-person college education.

2. Ms. King, a Baylor student, paid tuition and fees to attend Baylor, participated in Baylor's meal plan, and took advantage of the full on-campus college experience until the spring of 2020, when that experience was taken away from students at Baylor.

3. In March 2020, in response to the outbreak of the SARS-CoV-2 virus, the virus that causes the COVID-19 disease (the "COVID-19 pandemic"), Baylor, like many other universities, moved all learning online for the remainder of the Spring 2020 semester. Baylor cancelled athletic and other on-campus recreational events, cancelled students' meal plans, and ordered students to refrain from going on campus.

4. As a result, all on-campus classes, dining, and other services and amenities were no longer available to Baylor students.

5. Despite the harsh reality that students could no longer learn on campus, Baylor refused to provide a prorated refund of fees tied to on-campus services and amenities that were not available to students for a significant part of the Spring 2020 semester. In addition, by requiring students to pay (and many to borrow) full tuition for the Spring 2020 semester, Baylor did not take into account the difference in value between the college experience the school is now offering compared to what students were promised. Finally, although Baylor provided credits for unused meal plans and dining dollars, students are entitled to a refund and to use their money as they see fit.

6. Accordingly, the students have lost the benefits of the bargain for services and education for which they paid but can no longer access or use.

7. While prorated refunds for tuition, meal plans, and fees charged for services not provided will not replace the lost on-campus experience, they would provide Ms. King and the putative Class Members with some financial relief as many students prepare to graduate into a depressed job market.

8. By not giving prorated refunds for tuition, meal plans, and fees charged for services not provided, Baylor breached its contracts with students and is alternatively unjustly enriched, as it will reap the consequential benefits of revenue while students are deprived of much needed cash.

9. It cannot be disputed that the circumstances underlying this legal action are unfortunate and unprecedented. However, the students did not choose this circumstance, and they certainly did not agree to pay for tuition and fees when learning remotely without the use of the

services for which they paid handsomely.

10. It is unfair and unlawful for Baylor to retain tuition and fees for services not being provided and to pass the losses on to the students.

11. Ms. King brings this class action for damages, restitution, and declaratory relief resulting from Baylor's retention of the full tuition, meal plan, and fees paid by Ms. King and the other putative Class Members for services not being provided. Specifically, this lawsuit seeks disgorgement of the prorated, unused amounts of the meal plans, dining dollars, and fees that Ms. King and other putative Class Members paid, but for which they (or the students on behalf of whom they paid) will not be provided the benefit, as well as a partial tuition reimbursement to compensate for the diminished value of remote instruction along with the portion of the tuition that funds on-campus services, facilities, and extra-curricular activities that ceased when Baylor closed the campus.

## PARTIES

12. Ms. King is a citizen of Texas, residing in McAllen, Texas. She paid full tuition and fees for the Spring 2020 semester at Baylor. Ms. King was forced to move to exclusively online classes, refrain from visiting campus, and prevented from utilizing Baylor's meal plan, among other services she paid for.

13. Ms. King enrolled at Baylor for the Spring 2020 semester, which was scheduled to run from approximately January 13, 2020 through May 11, 2020. Ms. King has not had access to campus since March 8, 2020 because the university closed from March 9, 2020 to March 17, 2020 for spring break, and after that, the campus was closed due to COVID-19. Ms. King paid tuition, meal plan that came with $150 in dining dollars, and fees for the Spring 2020 semester, the benefits of which she lost because Baylor closed the campus and cut off access to on-campus services, facilities, and extra-curricular activities.

14. Baylor is a private, not-for-profit university incorporated in the State of Texas with its principal place of business in Waco, Texas. Baylor may be served through its registered agent: CT Corporation System, 1999 Bryan St., Ste. 900, Dallas, TX 75201.

## JURISDICTION AND VENUE

15. Venue is proper in this district because Baylor resides in this district. 28 U.S.C. § 1391(b)(1).

16. The Court has original jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2)(A), because the matter in controversy exceeds the sum or value of $5,000,000.00, exclusive of interests and costs, and is a class action in which one or more of the Class Members are citizens of a State different from the Baylor.

17. This Court has personal jurisdiction over Baylor because its principal place of business is within this district.

## FACTUAL ALLEGATIONS

### A. On-Campus Education

18. Students who enroll in Baylor's on-campus programs and classes do so because in-person education enhances and contributes to the overall educational experience. Students choosing an on-campus learning environment pay for the opportunity to have in-person classes featuring direct interaction with faculty and on-campus amenities and activities, including the dining hall, library, fitness center, pool, sporting events, and other extra-curricular activities.

19. Baylor tells prospective students:

> The Baylor college experience is special. We cultivate a rich campus life that will help you grow intellectually, spiritually and emotionally. Whether you're enjoying Diadeloso (our campus-wide "Day of the Bear" celebration), taking some time to reflect in chapel or just hanging out over coffee, you'll feel like a part of the Baylor family from the moment you set foot on Fountain Mall.[1]

20. Baylor invites prospective students to, "[e]xplore the picturesque Baylor Campus and learn more about our state-of-the-art facilities that blend historic beauty with innovative function."[2] It also boasts its exciting athletics program:

> Baylor is a charter member of the powerful Big 12 Conference, which means students enjoy the excitement of Division I athletics and receive free tickets to all

---

[1] https://www.baylor.edu/admissions/index.php?id=924749 (last accessed on June 2, 2020).
[2] https://www.baylor.edu/admissions/whybaylor/index.php?id=968114 (last accessed on June 2, 2020).

sporting events! Not quite at that level of play yourself? No worries. Baylor also offers competitive and recreational sports for all students through club and intramural groups.[3]

21. On-campus offerings include the McLane Student Life Center, a 156,000 sq. ft. multi-recreational facility that features the tallest free-standing climbing structure in Texas, an aquatics center, 3-tiered fitness facility, and four courts equipped to support basketball or volleyball.[4] Baylor is home to over 330 student organizations, including academic and professional clubs, traditional Greek sororities and fraternities, honor societies, musical groups, and religious and service organizations.[5]

22. Baylor made the decision to close its campus on or about March 16, 2020.

23. Ms. King and other Baylor students did not pay for online-only courses in a fully remote learning environment without access to campus facilities.

24. Several studies have shown that online learning is not as effective as traditional, in-person instruction. For example, a study from the Community College Research Center which compared online and face-to-face course outcomes found that "failure and withdrawal rates were significantly higher for online courses than for face-to-face courses."[6] Those who completed the online courses received poorer grades than students who attended in person.[7] The study concluded that "online courses may exacerbate already persistent achievement gaps between student subgroups."[8] Another study that compared outcomes for students in California community colleges also concluded that "in the short term, course by course, student outcomes are worse in

---

[3] https://www.baylor.edu/admissions/index.php?id=872004 (last accessed on June 2, 2020).

[4] https://www.baylor.edu/campusrec/index.php?id=931299 (last accessed on June 2, 2020).
[5] https://www.baylor.edu/admissions/index.php?id=872294 (last accessed on June 2, 2020).
[6] Community College Research Center, *What We Know About Online Course Outcomes*, Research Overview 2 (April 2013), https://ccrc.tc.columbia.edu/media/k2/attachments/what-we-know-about-online-course-outcomes.pdf.
[7] *Id.* at 3. Adding controls for student socioeconomic and educational characteristics increased the negative outcomes associated with online learning. *See id.* at 4.
[8] *Id.* at 6.

online courses than in traditional courses."[9]

25. Faculty, academic leaders, employers, and the public remain skeptical about the value of online education.[10] In 2013, a Gallup poll found that "Americans' overall assessment of internet-based college programs is tepid at best." The majority of Americans found internet-based college programs to be "only fair" or "poor."[11]

26. In ten national surveys of chief academic officers by the Babson Survey Research Group during the 2002-2015 period, no more than a third reported that their faculty "accept the value and legitimacy of online education."[12] In a 2012 survey of over 4,500 faculty, two thirds reported that learning outcomes for online courses are "inferior or somewhat inferior" when compared to face-to-face courses; with only 6% reporting outcomes for online instruction as "superior or somewhat superior."[13]

27. The Chronicle of Higher Education has also found that online colleges ranked last in terms of "employer desirability of college type"; indeed, online programs were the only type of college found to be undesirable.[14] And a 2013 study found that over half of employers prefer "a job applicant with a traditional degree from an average school over an applicant with an online degree from a top university (just 17 percent say they'd prefer the latter)."[15] Thus, students who

---

[9] Hans Johnson and Marisol Cuellar Mejia, *Online Learning and Student Outcomes in California's Community Colleges*, Public Policy Institute of California 1 (May 2014), https://www.ppic.org/content/pubs/report/R_514HJR.pdf.

[10] I. Elaine Allen, *et al.*, *Online Report Card: Tracking Online Education in the United States*, Babson Survey Research Group & Quahog Research Group, LLC 9 (Feb. 2016), https://onlinelearningsurvey.com/reports/onlinereportcard.pdf.

[11] *See* Lydia Saad, *et al., In U.S. Online Education Rates Best for Value and Opinions; Viewed as Weakest in Terms of Trusted Grading and Acceptance by Employers*, Gallup (Oct. 15, 2013), https://news.gallup.com/poll/165425/online-education-rated-best-value-options.apx.

[12] I. Elaine Allen, *et al., supra* note 14 at 6.

[13] I. Elaine Allen, *et al.*, *Conflicted: Faculty and Online Education, 2012*, Babson Survey Research Group & *Inside Higher Ed* (Feb. 2012), https://files.eric.ed.gov/fulltext/ED535214.pdf.

[14] *The Role of Higher Education in Career Development: Employer Perceptions*, Chronicle of Higher Education (Dec. 2012), https://chronicle-assets.s3.amazonaws.com/5/items/biz/pdf/Employers%20Survey.pdf.

[15] Public Agenda, *Not Yet Sold: What Employers and Community College Students Think About Online Education* (Sept. 13, 2013), https://www.publicagenda.org/reports/not-yet-sold-what-employers-and-community-college-students-think-about-online-education/.

receive entirely online instruction will have "limited labor market opportunities as long as these strong views persist among employers."[16]

### B. Baylor Orders Students Home and Closes Campus In Response to the COVID-19 Outbreak

28. Before beginning the Spring 2020 semester at Baylor, Ms. King paid $21,421.00 to Baylor to cover her Spring 2020 semester tuition. Ms. King also paid a yearly General Student Fee in the amount of $2,261, a Course Lab Fee of $50.00 for one of her courses, and a Chapel Fee of $90.00. Finally, Ms. King paid $1,773.14 for her meal plan, along with another $150.00 of dining dollars for the Spring 2020 semester.

29. Spring 2020 semester classes at Baylor began on or about January 13, 2020, just like any other semester, with Ms. King attending classes in-person and on campus. Final exams for the semester were scheduled to end on or about May 11, 2020.

30. Baylor's spring break began on or about March 9, 2020 and was supposed to end on March 17, 2020.

31. But on March 11, 2020, as a result of the COVID-19 pandemic, Baylor announced that spring break would be extended one week, through March 22, 2020, and that beginning on March 23, 2020, all on-campus classes would be moved online for the next two weeks, through April 3, 2020.[17] On March 13, 2020, Baylor announced that all university activities, events, conferences and large gatherings were also suspended from March 16, 2020 through April 3, 2020.[18]

32. On March 16, 2020, Baylor notified its students that it had made the decision to

---

[16] *Id.*
[17] *COVID-19 Extends Spring Break, Prepare for Online Instruction*, available at https://www.baylor.edu/president/news.php?action=story&story=217915 (last accessed on June 2, 2020).
[18] *Baylor COV-19 updates, plans for next 3 weeks*, available at https://www.baylor.edu/president/news.php?action=story&story=217992 (last accessed on June 2, 2020).

extend online instruction at Baylor for the remainder of the Spring 2020 semester.[19] In this communication, Baylor also advised that "dining options on campus will be significantly limited, primarily to grab-and-go options at one location, and recreational opportunities will be unavailable, including those in the McLane Student Life Center."[20] Furthermore, Baylor advised that all university activities, events, conferences, and large gatherings would be suspended through the end of the semester.[21]

33. On or about March 30, 2020, Baylor made an announcement about refunds and announced that all meals plans would be prorated by the daily rate associated with the plan and students would be given a credit of that amount and that all unused dining dollars will roll forward to the next semester.[22] The foregoing applies to all meal plans, including the Block Meal Plan.[23] However, students are entitled to refunds of their meal plans, not credits.

34. Baylor also announced that the General Student Fee would not be credited, and that it would not be refunding lab fees.[24]

35. Baylor has also refused to refund any tuition,[25] even though Ms. King and other Class Members paid tuition for an on-campus experience with in-person instruction and access to on-campus facilities.

36. The value of these services was severely diminished for the Spring 2020 semester. With academic instruction moved entirely online, Ms. King and other Baylor students were deprived of the benefits of on-campus learning, and Ms. King and other Class Members were deprived of the benefit of the bargain for which they paid.

37. Yet Baylor has refused to refund any portion of tuition, which students paid under

---

[19] *Baylor to go online remainder of semester, Commencement postponed*, available at https://www.baylor.edu/president/news.php?action=story&story=218018 (last accessed on June 2, 2020).
[20] *Id.*
[21] *Id.*
[22] https://www.baylor.edu/coronavirus/index.php?id=967403 (last accessed on June 2, 2020).
[23] *Id.*
[24] *Id.*
[25] *Id.*

the assumption of an on-campus experience, or proportional prorated amounts of Fees, even though those Fees specifically cover on-campus facilities and activities.

38. Baylor, a well-endowed, Christian-affiliated private university, apparently expects its students to shoulder the financial brunt of the COVID-19 pandemic alone, notwithstanding that students are the worst positioned to be able to do so.

39. Indeed, more than two thirds of students graduate college with student loan debt. Student loan debt has ballooned to nearly $1.56 trillion dollars, with the average student loan debt for the class of 2018 at $29,200.

40. The average borrower must spend hundreds of dollars per month repaying student loans—averages range from $300 to nearly $600 across surveys—and many borrowers struggle to repay their loans.[26] It is therefore unsurprising that over 10% of borrowers default on their loans.[27] Even among borrowers who remain current on their payments, a 2019 survey found that student-debt holders spent 20% of their take-home pay on their student loans—reducing the amount they can save for retirement, a down payment on a home, unexpected medical expenses, to care for elderly relatives, and other expenses and emergencies.[28]

41. Moreover, students graduating in 2020 will struggle as they face an abysmal job market, whether or not they took out loans to fund their education. On May 8, 2020, the United States Bureau of Labor Statistics reported that 20.5 million Americans lost their jobs in April 2020, pushing the unemployment rate up to 14.7% from 4.4% in March 2020.[29] Students have already lost on campus jobs or in their college towns, as well as internships that help them build their resumes, due to the pandemic. Now they are preparing to enter a workforce at a time when tens of

---

[26] Nigel Ohiwaya, *These five charts show how bad the student loan debt situation is*, NBC News (April 24, 2019), https://www.nbcnews.com/news/us-news/student-loan-statistics-2019-n997836; *see also* Abigail Hess, *Survey finds that student debt holders spend 20% of their take-home pay on loans*, CNBC (Aug. 8, 2019), https://www.cnbc.com/2019/08/08/student-debt-holders-spend-20percent-of-their-take-home-pay-on-loans.html.

[27] *Id.*

[28] Hess, *Survey finds that student debt holders spend 20% of their take-home pay on loans*, *supra* note 22.

[29] https://www.bls.gov/news.release/empsit.nr0.htm (last accessed May 8, 2020).

millions are filing for unemployment. The Class of 2020 is graduating into the worst job market in a generation, and there is no telling how long it will take for the country to recover.

42. Yet there has been no indication that the federal government or private lenders will forgive student loans simply because student borrowers saw their educations disrupted by the pandemic and will likely struggle to pay off their student loans. And it would be manifestly unjust that students, including Ms. King, should have to shoulder this burden when they have not even received the benefit of the bargain for which they took out those loans in the first place.

### A. Tuition

43. Baylor offers an in-person, hands-on curriculum. Ms. King and the putative Class Members paid for in-person classes and to otherwise receive an all-encompassing "life on-campus" experience.

44. Thus, Ms. King and Class Members paid Baylor for, and Baylor in turn agreed to provide, services including:

   a. Face to face interaction with professors, mentors, and peers;
   b. Hands-on learning and experimentation;
   c. Networking and mentorship opportunities;
   d. Access to on-campus facilities such as computer labs, libraries, study rooms, and laboratories;
   e. Student government and student unions;
   f. Extra-curricular activities, groups, and intramurals; and
   g. Student culture, student development, and other similar activities.

45. Ms. King and other Class Members paid tuition, the value of which has now been severely diminished, as well as Fees for the Spring 2020 semester.

46. As the research indicates, students who are forced to attend classes online, rather than in person, are unlikely to receive the same quality of education and experience as they would from online instruction. This has been borne out in Ms. King's personal experience.

47. For example, Ms. King has found the lack of first-hand access to her instructors and advisors difficult as they are less accessible remotely than they were when she was on campus.

Classes have been canceled or shortened due to technical glitches. In addition, some professors would merely post assignments for students to complete on their own, rather than provide live instruction as they did in the past.

48. Additionally, critical hands-on instructional experiences and interactions that complement pure lecture time were not replaced with similarly complementary remote learning tools.

### B. Fees

49. On top of tuition, Baylor required students to pay a General Student Fee in the amount of $2,261.00 for the Spring 2020 semester.[30]

50. Ms. King, like many other students, also paid a Course or Lab Fee in the amount of $50.00 for one of her courses.

51. In addition, Ms. King paid a Chapel Fee of $90.00, that is required of all Baylor students for two semesters.

52. Baylor also provides other services for a fee including Parking Fee, Yearbook Fee, Student Life Center/Health Center Fee, Athletic Events Attendance Fee, and others.

53. These required and optional fees are collectively referred to herein as the "Fees."

### C. Meal Plan

54. Students paid anywhere from $850.69 to $3,037.03 per semester for Baylor's various meal plans.[31]

55. Ms. King paid $1,773.14 for her selected Classic 10 Meal Plan along with another $150.00 in dining dollars for the Spring 2020 semester.

56. Given the closure of Baylor's campus, Ms. King, and other students similarly situated, lost approximately half of the Spring 2020 semester's on-campus classes, activities, and meals.

---

[30] https://web.archive.org/web/20190826052701/https://www.baylor.edu/admissions/index.php?id=872111 (last accessed on June 2, 2020).
[31] https://www.baylor.edu/sfs/index.php?id=936925 (last accessed on June 2, 2020).

### D. Students Are Experiencing Significant Losses, in Many Cases of Borrowed Funds as a Result of Defendant's Conduct

57. At Baylor, the median federal loan debt among borrowers who completed their undergraduate degree is $24,000.00.[32] The median monthly federal loan payment (if it were repaid over 10 years at 5.05% interest) for student federal loan borrowers who graduated from Baylor is $255.00.[33]

58. In addition, 14% of graduating students at Baylor University took out private loans.[34] Students with private loans had an average of $43,670 in private loan debt at graduation.[35]

59. With the academic instruction entirely online, Ms. King and Class Members have been deprived of the benefits of on-campus learning as set forth above. Yet, Baylor has refused to refund any portion of the tuition, which is not worth as much as Ms. King and Class Members paid under the assumption of an on-campus experience.

60. Ms. King and the putative Class Members are entitled to a refund and use of the money that they paid Baylor for on-campus instruction and on-campus experiences. Students could use that money to pay for expenses; to defray the costs of lost jobs or internships over the summer; or, for students who took out loans, to reduce their loan obligations.

61. Baylor has retained the value of the monies paid by Ms. King and the Class Members for tuition, Fees, and meal plans for the Spring 2020 semester, while failing to provide the services for which those monies were paid.

62. Through this lawsuit, Ms. King seeks for herself and the other Class Members: (i) Baylor's disgorgement of the unused portion of all Fees, meal plans, and dining dollars for the Spring 2020 semester, proportionate to the amount of time that remained in the Spring 2020 semester when classes moved online and corresponding campus services ceased being provided

---

[32] https://www.usnews.com/best-colleges/baylor-university-6967/paying (last accessed on June 2, 2020).
[33] *Id.*
[34] *Id.*
[35] *Id.*

and (ii) a prorated tuition reimbursement to compensate for the diminished value of remote instruction and the portions of the tuition attributable to access on-campus facilities and extra-curricular activities of which students are no longer receiving the benefit. Ms. King seeks return of those amounts on behalf of herself and the Class Members as defined below.

## CLASS ACTION ALLEGATIONS

63. Ms. King brings this action on behalf of herself and the following class of persons pursuant to Federal Rule of Civil Procedure 23(b)(3):

> **All students who paid, or other persons who paid on a student's behalf, Baylor any of the following costs for the Spring 2020 semester: (a) tuition and/or (b) Fees and/or (c) meal plans (the "Class").**

64. Excluded from the Class are Baylor, any entity in which Baylor has a controlling interest, and Baylor's officers, directors, legal representatives, successors, subsidiaries, and assigns. Also excluded from the Class are any judicial officer presiding over this matter, members of their immediate family, and members of their judicial staff, and any Judge sitting in the presiding court system who may hear an appeal of any judgment entered.

65. Plaintiff reserves the right to amend or modify the Class definition with greater specificity or division after having had an opportunity to conduct discovery.

66. The Class meets the criteria for certification under Rule 23(a), (b)(2), (b)(3), and (c)(4).

67. **Numerosity.** The members of the Classes are so numerous that individual joinder of all Class Members is impracticable. Although the exact number of members of the Class is unknown to Ms. King at this time and can be ascertained only through appropriate discovery, Baylor's website states that it has 17,204 students enrolled.[36] Thus, there are likely thousands of Class Members.

68. **Commonality and Predominance.** This action involves common questions of law and fact that will drive the litigation and predominate over any questions affecting only

---

[36] https://www.baylor.edu/admissions/index.php?id=871978 (last accessed June 2, 2020).

individual Class Members. Common questions include, but are not limited to:

      a.      Whether Baylor engaged in the conduct alleged herein;

      b.      Whether Baylor breached its contracts with Plaintiff and other Class Members by not refunding them a prorated amount of their tuition, Fees, and/or meal plan dining dollars on account of the closure of Baylor's campus in the Spring 2020 semester;

      c.      Whether Baylor was unjustly enriched by retaining fees and payments for meal plans of Plaintiff and other Class Members without providing the services that the Fees and meal plans were intended to cover;

      d.      Whether Baylor was unjustly enriched by not refunding Plaintiff and other Class Members a prorated amount of their tuition to account for the difference in value between online and in-person education;

      e.      Whether certification of the Class is appropriate under Rule 23; and

      f.      The amount of damages incurred by Plaintiff and the Class Members.

69. **Typicality.** Plaintiff's claims are typical of those of the other Class Members because Plaintiff and the Class Members each paid for certain costs associated with the Spring 2020 semester at Baylor but were not provided the services that those costs were meant to cover. Plaintiff and other Class Members suffered damages – the loss of their tuition, Fees, and payments for meal plans paid – as a direct and proximate result of the wrongful conduct in which Baylor engaged. Plaintiff's claims arise from the same practices and course of conduct that gives rise to the other Class Members' claims.

70. **Adequacy.** Plaintiff is an adequate representative of the Class because her interests are aligned, and do not conflict, with the interests of the other Class Members. Plaintiff has retained counsel who are experienced and competent in complex class action litigation, including consumer contract litigation. Plaintiff and her counsel intend to vigorously prosecute this action for the benefit of the Class as a whole. Class Members' interests will be fairly and adequately protected by Plaintiff and her counsel.

71. **Superiority.** A class action is superior to any other available means for the fair and

efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and the other Class Members is relatively small compared to the burden and expense that would be required to individually litigate their claims against Baylor, making it impracticable for Class Members to individually seek redress for Baylor's wrongful conduct. Even if Class Members could afford individual litigation, the court system could not. Individual litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of a single adjudication, economies of scale, and comprehensive supervision by a single court.

## CAUSES OF ACTION

### COUNT I
### Breach of Contract
### On behalf of Plaintiff and the Class

72. Ms. King and the Class Members repeat and allege paragraphs 1 through 71 above as if fully alleged herein.

73. Ms. King brings this claim individually and on behalf of the other members of the Class.

74. Ms. King and other Class Members entered into contracts with Baylor, which provided that Ms. King and other Class Members would pay monies, and in exchange, Baylor would provide access to an entirely on-campus education and experience, which includes face-to-face academic instruction, along with a host of other educational services and extracurricular activities. Pursuant to these contracts, Plaintiff and other Class Members also paid the Fees paid for meal plans.

75. Each day for the weeks and months leading up to the closure of campus, students attended physical classrooms to receive in-person instruction, and Defendant provided such in-person instruction.

76. Likewise, Ms. King, and upon information and belief, most students were provided

with syllabi and other documents that referenced class meeting schedules, locations, and physical attendance requirements.

77. Each day for the weeks and months prior to announced closures students had access to the full campus.

78. Accordingly, it is clear that Defendant offered to provide live in-person education and that Ms. King and the Class Members accepted that offer by paying tuition and attending classes in from the beginning of the Spring 2020 Semester until the campus closures.

79. In fact, it is clear that, prior to the COVID-19 interruption, Defendant had no plans whatsoever to offer its in-person classes via an online delivery model.

80. Ms. King and other Class Members indicated their assent to the on-campus college experience and fulfilled their end of the bargain when they paid the monies due and owing for the Spring 2020 semester. Baylor did not. Specifically, Baylor failed to provide the agreed-upon on-campus classes and services for which the tuition, Fees, and meal plan payments were paid for the entire Spring 2020 semester. Accordingly, Baylor breached its contract(s) with Ms. King and other Class Members, entitling Ms. King and Class Members to reimbursement of the monies paid for the unused days of on-campus classes and services not received.

81. Baylor retained monies paid by Ms. King and other Class Members for the Spring 2020 semester for on-campus classes and other services for which the tuition, Fees, and meal plan were paid without providing them the benefit of their bargain.

82. Although the meal plans and dining dollar payments were credited, Ms. King and the Class Members are entitled to refunds.

83. Baylor's performance under the contracts are not excused because of the COVID-19 pandemic: the relevant contracts provide no such terms excusing performance given nationwide pandemics. Thus, Baylor should have fully refunded the prorated portion of any unused fees and meal plans, as well as provided a refund for the diminution in value of the education received for online classes.

84. Ms. King and other Class Members performed their end of the contract by paying

making all payments due for the Spring 2020 semester.

85. As a result of Baylor's breach of contract, Ms. King and the other Class Members were damaged financially in that they have been deprived of the benefit of their bargain, as described herein and in amounts to be proven at trial.

### COUNT II
### Unjust Enrichment
### (In the alternative)
### On behalf of Plaintiff and the Class

86. Plaintiff and the Class Members repeat and allege paragraphs 1 through 71 above as if fully alleged herein.

87. Ms. King brings this claim individually and on behalf of the other members of the Class and in the alternative to the breach of contract claim brought on behalf of Ms. King and the other members of the Class.

88. Ms. King and other Class Members conferred substantial monetary benefits on Baylor by paying their tuition, Fees, and paying for meal plans and dining dollars for the Spring 2020 semester.

89. Baylor has accepted and retained those benefits at the expense of Ms. King and other Class Members, without providing the services for which such payments were made. As to the on-campus services and activities covered by the Fees and meal plan payments, zero benefit was provided during the weeks in the Spring 2020 semester covering closure of Baylor's campuses. The tuition benefits were also diminished when students were forced to switch exclusively to online classes.

90. Although the meal plan payments were credited, Ms. King and the Class Members are entitled to refunds.

91. Baylor has been unjustly enriched by retaining the monies paid by Ms. King and other Class Members for the Spring 2020 semester for services not provided or diminished by the campus closure. Equity requires Baylor to return prorated amounts for tuition, Fees, and meal plan payments paid by Ms. King and other Class Members as described herein and to be proven at trial.

## PRAYER FOR RELIEF

Plaintiff, on behalf of herself and all others similarly situated, requests that the Court enter judgment as follows:

a. Enter an Order determining at the earliest possible time that this matter may proceed as a class action under Rule 23 and certifying this case as such;

b. Declaring Baylor's policies in failing to pay refunds to be in breach of its contracts with students;

c. For herself and each Class Member, his or her actual compensatory damages in an amount to be proven at trial;

d. Equitable disgorgement and restitution in an amount to be proven at trial;

e. Reasonable attorneys' fees and costs of suit;

f. Pre-judgment interest; and

g. Such other and further relief as this Court deems reasonable and just.

**PLAINTIFF DEMANDS A TRIAL BY JURY
<u>ON ALL CLAIMS AND ISSUES SO TRIABLE.</u>**

DATED: June 5, 2020                                                                    Respectfully submitted,

| | |
|---|---|
| Edwards Law<br>The Haehnel Building<br>1101 East 11th Street<br>Austin, Texas 78702<br>    Tel.    512-623-7727<br>    Fax.    512-623-7729<br><br>By: */s/ Michael Singley*<br>Jeff Edwards<br>Texas Bar No. 24014406<br>jeff@edwards-law.com<br>Scott Medlock<br>Tex. Bar No. 24044783<br>Michael Singley<br>mike@edwards-law.com<br>Tex. Bar No. 00794642<br>David James<br>david@edwards-law.com<br>Tex. Bar No. 24092572<br><br>Jeff Ostrow<br>Fla. Bar No. 121452<br>(*pro hac vice* to be filed)<br>Joshua R. Levine<br>Fla. Bar No. 91807<br>(*pro hac vice* to be filed)<br>**KOPELOWITZ OSTROW**<br>**FERGUSON WEISELBERG GILBERT**<br>1 West Las Olas Blvd. Suite 500<br>Fort Lauderdale, FL 33301<br>Telephone: (954) 525-4100<br>Facsimile: (954) 525-4300<br>Email: ostrow@kolawyers.com<br>levine@kolawyers.com | Daniel L. Warshaw<br>Cal. Bar No. 185365<br>(*pro hac vice* to be filed)<br>**PEARSON, SIMON & WARSHAW, LLP**<br>15165 Ventura Boulevard, Suite 400<br>Sherman Oaks, CA 91403<br>Telephone: (818) 788-8300<br>Facsimile: (818) 788-8104<br>Email: dwarshaw@pswlaw.com<br><br>Hassan A. Zavareei<br>Cal. Bar No. 181547<br>D.C. Bar. No. 456161<br>(*pro hac vice* to be filed)<br>Anna Haac<br>D.C. Bar No. 979449<br>(*pro hac vice* to be filed)<br>**TYCKO & ZAVAREEI LLP**<br>1828 L Street NW, Suite 1000<br>Washington, D.C. 20036<br>Telephone: (202) 973-0900<br>Facsimile: (202) 973-0950<br>Email: hzavareei@tzlegal.com<br>ahaac@tzlegal.com |

*Counsel for Plaintiff and the Proposed Class*