**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

ALLISON KING and JOSHUA ROOP, on
behalf of themselves and all others similarly
situated,

        *Plaintiffs*,

   v.

BAYLOR UNIVERSITY,

        *Defendant*.

CASE NO. 6:20-CV-00504

**BAYLOR UNIVERSITY'S MOTION TO DISMISS SECOND AMENDED COMPLAINT
FOR FAILURE TO STATE A CLAIM**

# TABLE OF CONTENTS

Page

INTRODUCTION ........................................................................................................ 1

BACKGROUND & PROCEDURAL POSTURE ............................................................ 3

ARGUMENT .............................................................................................................. 6

    I.     The PLPA bars Plaintiffs' sole surviving claim and requires dismissal. ...................... 6

        A.    The PLPA unquestionably applies to Plaintiffs' claim. .................................... 6

        B.    The PLPA is not unconstitutional under the Retroactivity Clause of
           the Texas Constitution. ........................................................................................ 7

             1.    The PLPA serves the compelling public interests of
                 protecting public health and promoting education. ............................. 8

             2.    The PLPA does not impair Plaintiffs' settled expectations. ............... 9

             3.    The PLPA doesn't stop plaintiffs from seeking non-
                 monetary relief. .................................................................................... 10

        C.    The PLPA is not unconstitutional under the Contracts Clauses of
           either the Texas Constitution or the Federal Constitution. ........................... 11

    II.    The term "educational services" cannot reasonably be read to require
        Baylor to provide in-person instruction all the time, no matter the
        circumstances. ........................................................................................................ 13

        A.    Plaintiffs' interpretation of the FRA is unreasonable. .................................... 13

        B.    The circumstances surrounding the FRA's formation cannot save
           Plaintiffs' unreasonable interpretation. ........................................................... 15

CONCLUSION .......................................................................................................... 16

TABLE OF AUTHORITIES

Page(s)

**Cases**

*Barshop v. Medina Cnty. Underground Water Conservation Dist.,*
    925 S.W.2d 618 (Tex. 1996)...................................................................................................12

*Bauer v. Texas,*
    341 F.3d 352 (5th Cir. 2003)..................................................................................................11

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007)..................................................................................................................6

*City of Baytown v. Schrock,*
    645 S.W.3d 174 (Tex. 2022) ..................................................................................................11

*Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.,*
    940 S.W.2d 587 (Tex. 1996)...................................................................................................13

*Cont'l Sav. Ass'n v. U.S. Fid. & Guar. Co.,*
    762 F.2d 1239 (5th Cir. 1985), *amended on reh'g in part*, 768 F.2d 89 (5th Cir. 1985) .......................14

*DeJoria v. Maghreb Petroleum Expl., S.A.,*
    935 F.3d 381 (5th Cir. 2019)................................................................................................8, 10

*Energy Reserves Grp., Inc. v. Kansas Power & Light Co.,*
    459 U.S. 400 (1983)................................................................................................................12

*In re Farmers Tex. Cnty. Mut. Ins. Co.,*
    604 S.W.3d 421 (Tex. App.—San Antonio 2019, orig. proceeding) ..................................15

*Garrigues v. Hardie,*
    2020 WL 4812636 (Tex. App.—Corpus Christi, Aug. 13, 2020, no pet.) .........................11

*Hance v. Hemelgarn Enters., Inc.,*
    51 F. App'x 929 (5th Cir. 2002) ...........................................................................................13

*Hogan v. Southern Methodist Univ.,*
    — F.Supp.3d ——, 2022 WL 954344 (N.D. Tex. March 29, 2022),
    *appeal docketed*, No. 22-10433 (5th Cir. Apr. 29, 2022) .............................2, 4, 7, 8, 9, 10, 11

*King v. Baylor Univ.,*
    46 F.4th 344 (5th Cir. 2022) ...................................................1, 2, 3, 4, 5, 6, 13, 14, 15, 16

*Liberty Mut. Ins. Co. v. Tex. Dep't of Ins.,*
    187 S.W.3d 808 (Tex. App.—Austin 2006, pet. denied) ...............................................11, 12

TABLE OF AUTHORITIES (*continued*)

Page(s)

*McMullen v. Emps. Ret. Sys. of Tex.*,
    935 S.W.2d 189 (Tex. App.—Austin 1996, writ denied) ..................................................14

*Miller v. Raytheon Co.*,
    716 F.3d 138 (5th Cir. 2013) ...........................................................................................7

*Nat'l Solid Wastes Mgmt. Ass'n v. City of Dallas*,
    2012 WL 13055145 (N.D. Tex. Jan. 31, 2012) ...............................................................13

*Norris v. Hearst Trust*,
    500 F.3d 454 (5th Cir. 2007)............................................................................................5

*In re Occidental Chem. Corp.*,
    561 S.W.3d 146 (Tex. 2018) ...........................................................................................10

*Pacheco v. St Mary's Univ.*,
    2017 WL 2670758 (W.D. Tex. June 20, 2017)................................................................16

*Piranha Partners v. Neuhoff*,
    596 S.W.3d 740 (Tex. 2020)......................................................................................15, 16

*Plotkin v. IP Axess Inc.*,
    407 F.3d 690 (5th Cir. 2005)............................................................................................6

*Powers v. United States*,
    783 F.3d 570 (5th Cir. 2015) .....................................................................................12, 13

*Robinson v. Crown Cork & Seal Co.*,
    335 S.W.3d 126 (Tex. 2011)...............................................................................7, 8, 9, 10

*Serafine v. Crump*,
    800 F. App'x 234 (5th Cir. 2020) ...................................................................................11

*Southwell v. Univ. of Incarnate Word*,
    974 S.W.2d 351 (Tex. App.—San Antonio 1998, pet. denied) .......................................16

*State Farm Lloyds v. Performance Improvement Corp.*,
    974 S.W.2d 135 (Tex. App.—San Antonio 1998, pet. denied) .......................................14

*Sveen v. Melin*,
    138 S. Ct. 1815 (2018) ..............................................................................................11, 12

*Tenet Hosps. Ltd. v. Rivera*,
    445 S.W.3d 698 (Tex. 2014).......................................................................................7, 8, 10

TABLE OF AUTHORITIES (*continued*)

Page(s)

*Tex. Educ. Agency v. American YouthWorks, Inc.*,
496 S.W.3d 244 (Tex. App.—Austin 2016),
*aff'd sub nom. Honors Acad., Inc. v. Tex. Educ. Agency*, 555 S.W.3d 54 (Tex. 2018) ...........8, 9

*Tex. Mun. League Intergovernmental Risk Pool v. Tex. Workers' Comp. Comm'n*,
74 S.W.3d 377 (Tex. 2002) ....................................................................................7

*Tex. Water Rights Comm'n v. Wright*,
464 S.W.2d 642 (Tex. 1971) ..................................................................................7

*Union Carbide Corp. v. Synatzske*,
438 S.W.3d 39 (Tex. 2014) .................................................................................9, 10

*Wal-Mart Stores, Inc. v. Sturges*,
52 S.W.3d 711 (Tex. 2001) ...................................................................................13

*White Deer Indep. Sch. Dist. v. Martin*,
596 S.W.3d 855 (Tex. App.—Amarillo 2019, pet denied) .......................................9

**Statutes**

Tex. Civ. Prac. & Rem. Code § 148.001(2) .............................................................6

Tex. Civ. Prac. & Rem. Code § 148.004(a) .............................................................6

Tex. Civ. Prac. & Rem. Code § 148.004(b) ...................................................4, 6, 11

Tex. Pandemic Liability Protection Act ..................................2, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 16

**Other Authorities**

Educate, *Merriam Webster Online Dictionary* ......................................................14

Tex. Gen. Laws, 87th Leg., R.S., Act of June 14, 2021 (S.B. 6) § 3 .........................4

## Introduction

In March of 2020, as the COVID-19 pandemic was first taking hold across the nation, Baylor University—like virtually every other university in the United States—made the difficult decision to tell its students to stay home for the second half of the spring semester and use an online-learning model to finish out the semester's course work. Truth be told, Baylor had little choice in the matter: its move to distance learning came just a few days after Governor Abbott declared COVID-19 to be a state of emergency in Texas, which led the McLennan County commissioners to issue a "shelter in place" order prohibiting individuals from leaving their residences except for "essential activities"—*excluding* university courses. Even so, the decision to transition to distance learning reflected Baylor's considered judgment about how best to strike a balance between providing its students with excellent instruction and also protecting their health and safety during the early stages of an unprecedented public health crisis.

This unwanted move to distance learning was undoubtedly a disappointment for many of Baylor's students (as it was for Baylor's faculty and staff). But that disappointment does not give rise to any legally cognizable claim against Baylor for damages or other monetary relief. This Court previously recognized as much in dismissing this case on the pleadings. And the Fifth Circuit largely agreed, affirming the dismissal of King's claim for unjust enrichment and for breach of an implied contract. *See King v. Baylor Univ.*, 46 F.4th 344 (5th Cir. 2022).

The only surviving claim is for breach of an express contract called the Financial Responsibility Agreement, or FRA, which all Baylor students signed as a condition of their enrollment for the Spring 2020 semester. As to that claim, the Fifth Circuit directed this Court to resolve three questions of law on remand, two of which are the focus of this motion. First, whether Texas's Pandemic Liability Protection Act (PLPA)—enacted while the case was on appeal—bars Plaintiffs' sole remaining damages claim; and second, whether Plaintiffs' narrow interpretation of the phrase "educational

services" in the FRA is unreasonable and therefore incapable of rendering the FRA ambiguous.[1]  If the answer to either of these questions is "yes," the Court should dismiss this case with prejudice. And the answer is "yes" to both.

As the Northern District of Texas already held in a parallel case involving Southern Methodist University, the PLPA squarely forecloses claims for tuition and fee refunds in connection with the Spring 2020 transition to temporary online learning.  *Hogan v. Southern Methodist Univ.*, — F.Supp.3d – —, 2022 WL 954344, at *7-10 (N.D. Tex. March 29, 2022), *appeal docketed*, No. 22-10433 (5th Cir. Apr. 29, 2022).  Baylor is entitled to dismissal for the same reason.  Plaintiffs may not like the Texas Legislature's policy decision, but it is controlling, and it ends this case.  *See id.*  The Court's analysis need not go any further.

In any event, even setting aside this fatal defect, Plaintiffs cannot prevail because they have not offered a reasonable interpretation of their contract with Baylor.  The FRA broadly requires Baylor to provide "educational services," and Plaintiffs admit that they received educational services through temporary online learning—so it's no surprise that the Fifth Circuit expressly credited Baylor's interpretation of "educational services" as reasonable.  *King*, 46 F.4th at 363.  Plaintiffs attempt to inject ambiguity by offering a competing meaning—namely, that "educational services" means only in-person instruction, at all times, no matter the circumstances.  But as this Court previously recognized, that interpretation would necessarily require the absurd conclusion that a university breaches its contract with its students when it cancels classes during an active-shooter situation or a dangerous blizzard.  Because Plaintiffs' proffered interpretation is unreasonable, and because they admit they received "educational services" during the Spring 2020 semester, the FRA unambiguously

---

[1] The Fifth Circuit also remanded for the Court to resolve in the first instance whether the educational malpractice doctrine forecloses the relief Plaintiffs seek.  *King*, 46 F.4th at 355 n.4.  Baylor reserves its right to address this doctrine at a later stage if needed.

requires judgment in favor of Baylor.

For either or both of these two independent reasons, the Court should dismiss Plaintiffs' Second Amended Complaint with prejudice.

## BACKGROUND & PROCEDURAL POSTURE

This is a putative class action brought by two Baylor undergraduates seeking a partial refund of the tuition and fees they paid for the Spring 2020 semester.[2]  In response to the COVID-19 pandemic, and in accordance with guidance from federal, state, and local health officials, Baylor University took several steps in March 2020 to protect the health of its students, faculty, and staff. Specifically, Baylor extended the Spring Break holiday by one week; determined that when classes resumed after Spring Break they would be conducted online instead of in person for the remainder of the semester; limited the number of dining options available on campus and offered credits for unused meal-plan funds and dining dollars; and temporarily closed several campus facilities.  SAC ¶¶ 31-33.

Plaintiff Allison King completed the semester, then filed this case in June 2020 alleging that Baylor's temporary transition to online learning breached an implied contract or constituted unjust enrichment.  *See* Am. Compl. ¶¶ 84-131.  As damages, King sought "a partial pro-rated tuition reimbursement representing the difference in fair value between the on-campus educational product for which [students] paid, and the online educational product that they received."  Am. Compl. ¶ 15.

Baylor's relationship with King, and all Baylor students, for the Spring 2020 semester is governed by the FRA, a contract all Baylor students executed as part of their course registration.  *King*, 46 F.4th at 352-53.  As relevant to this case, the FRA provided that by executing the contract, students agreed to pay "tuition, fees, and other associated costs" charged by Baylor in exchange for Baylor's

---

[2] Because Baylor seeks dismissal under Rule 12(b)(6), it recites the facts here as they are pleaded in the complaint; Baylor does not concede that the facts as pleaded are accurate or complete.

provision of "educational services."  *Id.*; *see also* SAC ¶¶ 74-75 (quoting relevant excerpt of FRA).[3]

Baylor moved to dismiss, arguing that King's claims were precluded by both her contract with Baylor (the FRA) and the educational malpractice doctrine.  Dkt. 31 (MTD); Dkt. 37 (Reply ISO MTD).  Magistrate Judge Manske's Report & Recommendation found that the FRA is a valid contract that Baylor did not breach and that the existence of a valid express contract precluded King's claims for breach of an implied contract and unjust enrichment.  Dkt. 49 (R&R).  In making those findings, the R&R determined that "the FRA is not ambiguous."  *Id.* at 11.  And because the FRA was dispositive, the R&R declined to address the educational malpractice doctrine, but noted that "if Texas or the Fifth Circuit adopted the [doctrine], King's claims would likely be forbidden."  *Id.* at 14 n.5.  The Court adopted the R&R and dismissed King's claims with prejudice.  Dkt. 55.  King appealed.

In June 2021—while King's appeal was pending before the Fifth Circuit—Texas enacted the PLPA.  As relevant here, the PLPA provides:

> An educational institution is not liable for damages . . . arising from a cancellation or modification of a course, program, or activity of the institution if the cancellation or modification arose during a pandemic emergency and was caused, in whole or in part, by the emergency.

Tex. Gen. Laws, 87th Leg., R.S., Act of June 14, 2021 (S.B. 6) § 3 (codified at Tex. Civ. Prac. & Rem. Code § 148.004(b)).  The PLPA took effect immediately and applies to any action "commenced on or after March 13, 2020, for which a judgment has not become final before the effective date of this Act."  PLPA § 5.  In its Fifth Circuit briefing, Baylor invoked the PLPA and the educational malpractice doctrine as alternative grounds to affirm this Court's judgment.

Also while this case was pending before the Fifth Circuit, the Northern District of Texas issued the first (and thus far only) judicial opinion construing the PLPA in the context of claims for tuition and fee refunds due to the transition to online learning in Spring 2020.  *Hogan*, 2022 WL 954344, at

---

[3] *See also* Dkt. 31-2 (MTD) (full text of the FRA), *also attached as* Exhibit 1 to this motion.

*7-10.  The plaintiff in *Hogan* conceded that his claims fell within the scope of the statute, but argued that the PLPA unconstitutionally violates the Texas Constitution's Retroactivity Clause.  The State of Texas, through its Attorney General, filed a brief defending the PLPA's constitutionality.  *See* Exhibit 2.[4]  The court rejected the constitutional challenge to the PLPA and dismissed the case.

On August 23, 2022, the Fifth Circuit published its opinion largely affirming this Court's dismissal.  *See King*, 46 F.4th 344.  The Fifth Circuit affirmed that as a matter of law: (1) the FRA is a valid contract governing this dispute, *id.* at 356-61; (2) the FRA precludes King's implied contract claims, *id.* at 365-67; and (3) the FRA precludes King's unjust enrichment claims, *id.* at 367-69.  As to whether Baylor breached the FRA, while the Fifth Circuit expressly held that Baylor's interpretation of the term "educational services" is reasonable (under which it is undisputed that no breach occurred), *id.* at 363, the court "esp[ied] a *potential* ambiguity in the definition of 'educational services,'" *id.* at 352 (emphasis added).  The Fifth Circuit did *not* hold the term to be ambiguous, but instead remanded for this Court to "consider whether 'educational services' as used in the FRA is latently ambiguous."  *Id.* at 362.  The Fifth Circuit declined to take up Baylor's PLPA and educational malpractice arguments, reserving those issues for this Court in the first instance.  *Id.* at 355 n.4.

On November 18, 2022, King, joined by new Plaintiff Joshua Roop, filed a Second Amended Complaint, now alleging that Baylor's temporary transition to online learning breached the FRA, which the Second Amended Complaint acknowledges is a valid express contract between Baylor and its students.  *See* SAC ¶¶ 72-110.  As to damages, Plaintiffs still seek "a partial pro-rated tuition reimbursement representing the difference in fair market value between the on-campus educational product for which [students] paid, and the online educational product that they received."  SAC ¶ 13.

---

[4] The Court may take judicial notice of the State of Texas's brief in the *Hogan* action defending the constitutionality of the PLPA.  *E.g., Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007) ("it is clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record").

ARGUMENT

Dismissal is warranted under Rule 12(b)(6) when a complaint fails to offer "enough facts to state a claim to relief that is plausible on its face." *King*, 46 F.4th at 355 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While the Court accepts all well-pleaded facts as true, it does "not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Id.* at 356 (quoting *Plotkin v. IP Axess Inc.,* 407 F.3d 690, 696 (5th Cir. 2005)).

## I. The PLPA bars Plaintiffs' sole surviving claim and requires dismissal.

The Court should accept the Fifth Circuit's invitation to dismiss this lawsuit under the PLPA. The PLPA bars Plaintiffs' claim, and their anticipated constitutional challenges to the law are meritless.

### A. The PLPA unquestionably applies to Plaintiffs' claim.

The PLPA bars Plaintiffs' claim for damages. The statute applies to any action "commenced on or after March 13, 2020, for which a judgment has not become final before the effective date of this Act," PLPA § 5, and provides that "[a]n educational institution is not liable for damages or equitable monetary relief arising from a cancellation or modification of a course, program, or activity of the institution if the cancellation or modification arose during a pandemic emergency and was caused, in whole or in part, by the emergency." Tex. Civ. Prac. & Rem. Code § 148.004(b)).

The allegations in the complaint establish that all of these elements are present here:

- First, Plaintiffs concede Baylor is an "educational institution." *See* Tex. Civ. Prac. & Rem. Code § 148.004(a) ("'educational institution' … includes: … a private … institution of higher education"); SAC ¶ 16 ("Baylor is a private, not-for-profit university…").

- Second, Plaintiffs concede that they challenge a course modification that arose during, and was caused by, a "pandemic emergency." *See* Tex. Civ. Prac. & Rem. Code § 148.001(2) ("'Pandemic emergency' means a state of disaster declared by the governor … in response to a pandemic disease."); SAC ¶ 7 (Baylor transitioned to online education "in response to the outbreak of the COVID-19 pandemic"); *see also* Proclamation by the Governor of the State of Texas, March 13, 2020 (attached hereto as Exhibit 3).

- And third, Plaintiffs' lawsuit was commenced after March 13, 2020, and was not "final" on the PLPA's effective date of June 14, 2021—indeed, it's still being litigated today. *See* Dkt. 1 (original Complaint filed June 5, 2020).

As a result, Baylor cannot be held liable for damages of any kind in this case.

    **B.**    **The PLPA is not unconstitutional under the Retroactivity Clause of the Texas Constitution.**

Before the Fifth Circuit, King did not seriously dispute that the PLPA applies to her claim. Instead, she argued that applying the PLPA would violate the Retroactivity Clause in Article I § 16 of the Texas Constitution. That argument is mistaken, as the Northern District of Texas already held.

"The constitutionality of a state statute is a question of law," *Miller v. Raytheon Co.*, 716 F.3d 138, 148 (5th Cir. 2013), well-suited for resolution at the motion-to-dismiss stage, *e.g. Hogan*, 2022 WL 954344, at *7-10 (rejecting retroactivity challenge to PLPA on a motion to dismiss).

"Mere retroactivity is not sufficient to invalidate a statute." *Tex. Water Rights Comm'n v. Wright*, 464 S.W.2d 642, 648 (Tex. 1971). Indeed, "not all retroactive legislation is bad," and the constitutional provision must be applied to achieve its "intended objectives—protecting settled expectations and preventing abuse of legislative power." *Robinson v. Crown Cork & Seal Co.*, 335 S.W.3d 126, 139 (Tex. 2011). Towards that end, the Supreme Court of Texas has articulated a three-factor test for Retroactivity Clause challenges. *Id.* at 145. Those factors are: "[1] the nature and strength of the public interest served by the statute as evidenced by the Legislature's factual findings; [2] the nature of the prior right impaired by the statute; and [3] the extent of the impairment." *Id.* The test "prevents the abuses of legislative power that arise when individuals or groups are singled out for special reward or punishment," and "[u]nder this test, changes in the law that merely affect remedies … or that … have little impact on prior rights, are usually not unconstitutionally retroactive." *Id.* at 145-46.

In any Retroactivity Clause challenge, courts begin "with a presumption that the statute is valid." *Tenet Hosps. Ltd. v. Rivera*, 445 S.W.3d 698, 701 (Tex. 2014). "The burden is on the party attacking the statute to show that it is unconstitutional," and courts "presume that the Legislature intended for the law to comply with the United States and Texas Constitutions, to achieve a just and reasonable result, and to advance a public rather than a private interest." *Tex. Mun. League*

*Intergovernmental Risk Pool v. Tex. Workers' Comp. Comm'n*, 74 S.W.3d 377, 381 (Tex. 2002).  It is exceedingly difficult for a litigant to show that a law is unconstitutionally retroactive; indeed, in the entire history of the State of Texas, the Texas Supreme Court has upheld Retroactivity Clause challenges *only four times*, "all of which dealt with laws that revived expired claims or fully extinguished vested rights."  *DeJoria v. Maghreb Petroleum Expl., S.A.*, 935 F.3d 381, 389 (5th Cir. 2019).

> 1.    **The PLPA serves the compelling public interests of protecting public health and promoting education.**

The first factor is "the nature and strength of the public interest served by the statute *as evidenced by* the Legislature's factual findings."  *Robinson*, 335 S.W.3d at 145 (emphasis added).  While legislative findings aren't strictly necessary to establish the nature and strength of a statute's public interest, *see Tex. Educ. Agency v. American YouthWorks, Inc.*, 496 S.W.3d 244, 264 & n.111 (Tex. App.—Austin 2016), *aff'd sub nom. Honors Acad., Inc. v. Tex. Educ. Agency*, 555 S.W.3d 54 (Tex. 2018), when present, they are especially strong evidence of a law's public purpose, *Robinson*, 335 S.W.3d at 145.

Here, the Legislature amply and expressly made factual findings concerning the public interest served by the PLPA.  As the Northern District of Texas noted, the PLPA's text expressly provides:

> [T]he legislature finds that while some settled expectations regarding claims to which this Act applies may be impaired by this Act, the Act serves a compelling public interest in establishing certain procedures and standards for addressing potential claims against individuals and entities faced with an unprecedented public health emergency that has had severe and adverse impacts on both the health and safety of individuals and the ordinary functioning of … educational … institutions, … and others whose daily lives have been upended by the emergency.

*Hogan*, 2022 WL 954344, at *9 (quoting PLPA § 4(C)).  Similarly, the PLPA's House Report states:

> The onslaught of COVID-19 on Texas has strained the state's … educational institutions, and there are widespread concerns regarding the long-term effects of the pandemic on these sectors, including the effects of lawsuits that have already been filed in Texas and across the nation.

*Id.* (quoting H.R. 87-26985, 87th Reg. Sess., at 1 (Tex. 2021)).

Legislative findings like these are strong evidence of compelling public interest.  *See, e.g., Tenet*

*Hosps.*, 445 S.W.3d at 707 (rejecting retroactivity challenge to statute limiting medical malpractice claims where "the Legislature expressly found that a spike in healthcare liability claims was causing a malpractice insurance crisis that adversely affected the provision of healthcare services in Texas"); *White Deer Indep. Sch. Dist. v. Martin*, 596 S.W.3d 855, 866 (Tex. App.—Amarillo 2019, pet denied) (treating legislative findings as sufficient to establish that a statute served a compelling public interest).

Even setting aside those express legislative findings, the PLPA plainly advances multiple compelling state interests.  First, the PLPA effectuates the State's paramount interest in protecting public health and safety, by ensuring that universities have latitude to make potentially life-saving adjustments to their courses in response to the pandemic without fear of incurring massive financial liabilities from student lawsuits.  *See Hogan*, 2022 WL 954344, at *9.  In addition, the PLPA goes hand-in-glove with the State's "unarguably compelling" interest "in ensuring that its citizens are educated." *Tex. Educ. Agency*, 496 S.W.3d at 264.  As the Legislature noted, an express purpose of the PLPA is to protect the ordinary functioning of higher education in Texas and reduce the disruptions to higher education caused by lawsuits like this one.  PLPA § 4(C)

Those paramount interests set the PLPA worlds apart from the rare statutes that have been invalidated on retroactivity grounds where the public interest was "slight" and the statute "was enacted to help only [the defendant] and no one else." *Robinson*, 335 S.W.3d at 149-50.  Here, by contrast, "the Legislature's express findings and broad scope of application indicate a compelling public interest for the Pandemic Liability Protection Law"—an interest that sweeps far beyond Baylor and Plaintiffs (or any other individual university and student).  *Hogan*, 2022 WL 954344, at *9.

### 2.    The PLPA does not impair Plaintiffs' settled expectations.

The second factor is "the nature of the prior right impaired by the statute." *Robinson*, 335 S.W.3d at 145.  This factor looks to whether the plaintiff's claim involves a "settled expectation" that was impaired by the statute.  *See Union Carbide Corp. v. Synatzske*, 438 S.W.3d 39, 58 (Tex. 2014).  And

even where the general "type" of a claim may be settled, the plaintiff's claim has not ripened into a settled expectation—and this factor is afforded little weight—where "the strength of [the plaintiff's] individual claim is unclear." *Tenet Hosps.*, 445 S.W.3d at 708.

As the Northern District of Texas recognized, a claim like Plaintiffs' "for a pro rata refund does not tie to clear precedent or an express contractual provision that would make it a slam-dunk contract case." *Hogan*, 2022 WL 954344, at *9. Indeed, "[t]he lack of discovery and inability to adjudicate these claims before the new law took effect mean that [a plaintiff's] right to recover damages is nonexistent at worst ... or unpredictable at best." *Id.*; *see also Union Carbide*, 438 S.W.3d at 58 (rejecting retroactivity challenge where plaintiff's right to recovery was "not yet predictable" when the statute took effect); *DeJoria*, 935 F.3d at 388 (rejecting retroactivity challenge where "[i]t is not even certain that the law as it stood before the adoption of the updated act would have [supported plaintiff's requested relief]"). This case is therefore different from the rare case like *Robinson* to uphold a retroactivity challenge. *See Tenet Hosps.*, 445 S.W.3d at 708 (distinguishing from *Robinson* because the "claim at issue (for mesothelioma) was a mature tort that had a substantial basis in fact due to the discovery in the case"). Plaintiffs' right to recover on a breach-of-contract claim based on Baylor's decision to temporarily transition to online learning at the outset of a global pandemic was far from "settled" at the time the PLPA was enacted, so the PLPA did not upset any settled expectation.

### 3. The PLPA doesn't stop plaintiffs from seeking non-monetary relief.

The final factor is the plaintiff's "extent of the impairment." *Robinson*, 335 S.W.3d at 145. While statutes that extinguish an entire class of claims might invite retroactivity concerns, statutes that merely circumscribe available remedies do not. The Supreme Court of Texas has squarely held that "applying . . . ***remedial*** . . . statutes retroactively does not violate the Constitution's prohibition on retroactive laws." *In re Occidental Chem. Corp.*, 561 S.W.3d 146, 161 (Tex. 2018) (emphasis added).

The PLPA is solely a limitation on remedies: It bars "damages or equitable monetary relief"

while leaving available the possibility of injunctive, declaratory, or other nonmonetary relief.  Tex. Civ.

Prac. & Rem. Code § 148.004(b).  As the Northern District of Texas explained, "cutting off a right to

certain remedies is not the same as barring a suit altogether."  *Hogan*, 2022 WL 954344, at *10.  "This

more limited method has been upheld by the Texas Supreme Court in **every** retroactivity challenge."

*Id.* (emphasis added) (compiling cases).  There is no basis to depart from that precedent here.[5]

### C.   The PLPA is not unconstitutional under the Contracts Clauses of either the Texas Constitution or the Federal Constitution.

Before the Fifth Circuit, King also argued that the PLPA violates the Contracts Clauses in

both Article I § 16 of the Texas Constitution and Article I § 10 of the Federal Constitution.  This

argument fails for largely the same reasons as Plaintiffs' Retroactivity Clause challenge.

To determine whether a statute violates either Contracts Clause,[6] courts have "long applied a

two-step test."  *Sveen v. Melin*, 138 S. Ct. 1815, 1821–22 (2018) (citation omitted).  The "threshold issue

is whether the state law has 'operated as a substantial impairment of a contractual relationship[,]' …

consider[ing] the extent to which the law undermines the contractual bargain, interferes with a party's

reasonable expectations, and prevents the party from safeguarding or reinstating his rights."  *Id.*  And

second, "[i]f such factors show a substantial impairment, … the Court [asks] whether the state law is

drawn in an 'appropriate' and 'reasonable' way to advance 'a significant and legitimate public

---

[5]  With almost three years having elapsed and the spring 2020 semester long since concluded, Plaintiffs lack standing to pursue any declaratory relief on their contract claim.  *See Serafine v. Crump*, 800 F. App'x 234, 236 (5th Cir. 2020) ("To have standing when 'seeking … declaratory relief', plaintiff must allege[] facts 'from which it appears there is a substantial likelihood that he will suffer injury in the future.'") (quoting *Bauer v. Texas*, 341 F.3d 352, 358 (5th Cir. 2003)).  But the fact that a request for declaratory relief would fail on the merits is irrelevant to the constitutional analysis; all that matters is that the PLPA "does not bar declaratory or injunctive relief."  *Hogan*, 2022 WL 954344, at *10.

[6]  The Texas and Federal Contracts Clauses contain almost identical text and "are interpreted nearly identically."  *Liberty Mut. Ins. Co. v. Tex. Dep't of Ins.*, 187 S.W.3d 808, 824 (Tex. App.—Austin 2006, pet. denied); *Garrigues v. Hardie*, 2020 WL 4812636, at *10 (Tex. App.—Corpus Christi, Aug. 13, 2020, no pet.) (noting the two clauses involve "similar analysis"); *see also, e.g., City of Baytown v. Schrock*, 645 S.W.3d 174, 183 (Tex. 2022) (Young, J., concurring).

purpose.'"  *Id.* (citation omitted).

Here, Plaintiffs' argument fails at the threshold step for the same reason they cannot prevail on their retroactivity argument.  *See* Sections I.B.2. and I.B.3. *supra*.  As set out above, it is far from settled that prior to the PLPA's enactment Plaintiffs' breach of contract claim against Baylor would have been viable.  And in any event, the PLPA does not extinguish their action entirely; it merely limits the available remedies.  That dooms Plaintiffs' Contract Clause claims at the outset:  "Laws that are remedial in nature and that do not disturb vested rights are not within the prohibition against the impairment of contracts," full stop.  *Liberty Mut.*, 187 S.W.3d at 825.

But even if Plaintiffs could establish the threshold requirement for a substantial impairment of any settled contractual right, their Contracts Clause argument would still fail because the PLPA reasonably advances the compelling public interests in education and public health discussed above. *See* Section I.A. *supra*; *see also, e.g., Barshop v. Medina Cnty. Underground Water Conservation Dist.*, 925 S.W.2d 618, 635 (Tex. 1996) (dismissing Contract Clause arguments without even analyzing the extent of impairment because "a valid exercise of the police power necessary to safeguard the public safety and welfare" does not violate the Contracts Clause); *Powers v. United States,* 783 F.3d 570, 579 (5th Cir. 2015) ("Even assuming … the ordinances substantially impaired [the] contracts…, [they] would not be invalidated under the federal or state Contract Clauses because they were a reasonable exercise of the City's police power.").

That's all the more true here because Plaintiffs' claim arises in the context of a contract between two *private* parties.  The Fifth Circuit has long recognized that when the allegedly impaired contract "is between two private parties, the court 'does not independently review the reasonableness of the legislation,' but instead 'defer[s] to the judgment of the legislature.'"  *Id.* at 578 (citation omitted); *see also Energy Reserves Grp., Inc. v. Kansas Power & Light Co.*, 459 U.S. 400, 412-13 & n.14 (1983) (explaining that unless a state is attempting to alter its own contractual obligations, the general rule is

that "courts properly defer to legislative judgment as to the necessity and reasonableness of a particular measure") (citation omitted); *Nat'l Solid Wastes Mgmt. Ass'n v. City of Dallas*, 2012 WL 13055145, at *4 (N.D. Tex. Jan. 31, 2012) (the reasonableness of a law's interference with contracts purely between private parties is subject to a lesser, more deferential standard).  In this circumstance, the Legislature's public policy determination is conclusive.  *See Powers*, 783 F.3d at 578.

## II.   The term "educational services" cannot reasonably be read to require Baylor to provide in-person instruction all the time, no matter the circumstances.

Even setting aside the PLPA, the FRA unambiguously precludes Plaintiffs' claim.  As the Fifth Circuit affirmed, the FRA is a valid contract by which Baylor agreed to provide "educational services" in exchange for the payment of tuition and fees.  *King*, 46 F.4th at 353 (quoting the FRA).  The Fifth Circuit expressly credited as reasonable Baylor's interpretation of "educational services" to include both on-campus and online learning.  *Id.* at 363.  But the Fifth Circuit left it to this Court to decide on remand whether the term "educational services" is ambiguous—that is, whether Plaintiffs have offered their own competing, reasonable interpretation such that the FRA can carry two valid meanings.  *Id.* at 361-65.  Because they have not, the FRA also requires judgment for Baylor.

### A.   Plaintiffs' interpretation of the FRA is unreasonable.

Whether a term in a contract is ambiguous is a question of law.  *Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.*, 940 S.W.2d 587, 589 (Tex. 1996).  "An ambiguity does not arise simply because the parties advance conflicting interpretations of the contract."  *Id.*  "[F]or an ambiguity to exist both interpretations must be reasonable."  *Hance v. Hemelgarn Enters., Inc.,* 51 F. App'x 929, at *3 (5th Cir. 2002) (citing *Wal-Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711, 728 (Tex. 2001)).

In their attempt to manufacture ambiguity, Plaintiffs claim that "educational services" means "in-person, on-campus" instruction, all the time, no matter the circumstances.  *E.g.*, SAC ¶¶ 10, 76, 94.  But that cannot be a reasonable interpretation.  "Educational services" is a broad term that can only be reasonably understood as encompassing both in-person and alternative forms of education.

*Cf.* Educate, *Merriam Webster Online Dictionary* (broadly defined as "to provide schooling for" or "train by formal instruction"). Nothing in the FRA suggests the term's meaning is limited to in-person instruction, all the time, no matter the circumstances. And Texas law is clear that broad terms in a contract are not ambiguous simply because there may be multiple ways to perform. *E.g., McMullen v. Emps. Ret. Sys. of Tex.*, 935 S.W.2d 189, 191–92 (Tex. App.—Austin 1996, writ denied) (term "orthoptics or visual training" not ambiguous); *State Farm Lloyds v. Performance Improvement Corp.*, 974 S.W.2d 135, 138 (Tex. App.—San Antonio 1998, pet. denied) ("professional services" not ambiguous).

Not only is Plaintiffs' interpretation inconsistent with plain meaning, but it would produce absurd results. *See Cont'l Sav. Ass'n v. U.S. Fid. & Guar. Co.*, 762 F.2d 1239, 1245 (5th Cir. 1985) ("[c]ontract provisions should be interpreted so as to avoid meanings that produce unreasonable, oppressive, or absurd results"), *amended on reh'g in part*, 768 F.2d 89 (5th Cir. 1985). In particular, if the FRA requires Baylor to provide in-person instruction all the time no matter the circumstances, then Baylor would breach its contract every time it temporarily moves classes online to deal with, for example, a flood, a blizzard, or some other safety threat. But everyone who has ever attended a college (including Plaintiffs) understands that universities must have flexibility to reschedule, alter, or cancel classes when faced with unexpected disasters; it would be preposterous to construe "educational services" to prohibit that universal understanding. Moreover, as Plaintiffs point out in their pleading, even before the pandemic, Baylor provided online instruction and received tuition for it under the FRA. *See* SAC ¶¶ 39-40. It would be absurd to read the FRA as meaning that a student who signed up for only online classes was thereby not required to pay tuition.[7]

---

[7] Plaintiffs also suggest that Baylor is liable for breach of contract because the FRA does not contain a force majeure clause. But the Fifth Circuit already rejected the argument that the absence of such a clause has any bearing on whether the FRA's use of the phrase "educational services" is unambiguous. *King*, 46 F.4th at 365 n.18 ("The absence of such a clause cannot supplant or detract from interpreting what the parties actually agreed on.").

This case is thus nothing like the Fifth Circuit's hypothetical example of a contract that requires delivery to "the green house on Pecan Street" without specifying which of the two green houses on that street. *King*, 46 F.4th at 362. A more fitting analogy to this case would be a contract that provides a house will be painted green, leaving the painter with discretion on the specifics, and the customer later claims the contract can reasonably be read as specifying the painter must use forest green # 5 in semi-gloss purchased from the Ace Hardware in an adjacent town. There is a difference between contractual discretion and contractual ambiguity. Just because there could be multiple variations of "green"—just as there could be multiple variations of "educational services"—does not mean any use of the term renders a contract ambiguous. *Cf. In re Farmers Tex. Cnty. Mut. Ins. Co.*, 604 S.W.3d 421, 427 (Tex. App.—San Antonio 2019, orig. proceeding) (insurance contract not ambiguous where it gave insurer discretion how to settle or defend claims).

**B.    The circumstances surrounding the FRA's formation cannot save Plaintiffs' unreasonable interpretation.**

The "surrounding circumstances" of the FRA's formation further confirm that "educational services" is unambiguous and that Plaintiffs have not stated a plausible claim for breach. *See King*, 46 F.4th at 363 (directing this Court to consider the "surrounding circumstances" of the parties' relationship); *see also Piranha Partners v. Neuhoff*, 596 S.W.3d 740, 749 (Tex. 2020) ("'objectively determinable facts and circumstances that contextualize the parties' transaction' may help clarify the parties' intent as expressed in … their written agreement") (citation omitted). Those "circumstances" might include the materials listed in Plaintiffs' operative complaint: brochures, advertisements, and catalogs—as well as Baylor's explicit course catalog disclaimer that it reserves the right to change "any and all aspects of its educational and other programs." *King*, 46 F.4th at 364-65 & n.17. However, whatever value these materials offer, they cannot be used "to 'augment, alter, or contradict the terms of an unambiguous contract,' to 'show that the parties probably meant, or could have meant, something other than what their agreement stated,' or to 'make the language say what it unambiguously

does not say.'" *Piranha Partners,* 596 S.W.3d at 749 (citations omitted).

Here, those "surrounding circumstances" only underscore that temporary online instruction during a deadly pandemic fits comfortably within the unambiguous term "educational services."  In all the materials their complaint cites, Plaintiffs never identify any promise by Baylor for in-person instruction, all the time, no matter the circumstances.  Nor could they, since no university would ever make such an irresponsible promise for in-person courses even in the face of natural disasters, active shooters, or life-threatening pandemics.  Instead, the materials Plaintiffs reference plainly include a disclaimer putting every student on notice that Baylor reserves the right to change the manner in which it offers the "educational services" it promises.  *See King,* 46 F.4th at 364-65 & n.17 (crediting Baylor's disclaimer as "pertinent").  Baylor's aspirational statements about a "rich campus life" and similar statements, *see* SAC ¶ 22; *see also id.* ¶¶ 23, 82 (similar), cannot reasonably be read to override the plain disclaimer that "educational services" need not be offered in-person irrespective of anything else.  Indeed, Texas law is clear that unless a university expressly promises otherwise, its academic courses "are subject to change throughout the course of [the students'] education."  *Pacheco v. St Mary's Univ.,* 2017 WL 2670758, at *9 n.4 (W.D. Tex. June 20, 2017) (quoting *Southwell v. Univ. of Incarnate Word,* 974 S.W.2d 351, 356 (Tex. App.—San Antonio 1998, pet. denied)).

In short, the hopeful statements in Baylor's marketing materials are not "objectively determinable facts and circumstances that contextualize the parties' transaction [and] help clarify the parties' intent."  *Piranha Partners*, 596 S.W.3d at 749 (citation omitted).  They cannot "augment, alter, or contradict the terms of an unambiguous contract" by reading into the FRA an in-person-no-matter-what clause that appears nowhere on the face of the contract.  *Id.* (citation and quotation marks omitted).  And Baylor's disclaimer forecloses any argument to the contrary.

## CONCLUSION

Because the relief Plaintiffs seek in their Second Amended Complaint is barred by the PLPA,

and because their surviving claim for breach of contract fails to state a claim, the Court should again dismiss their complaint with prejudice under Rule 12(b)(6).

DATE:   November 28, 2022                    Respectfully submitted,

                                             */s/ Russ Falconer*
                                             Russell H. Falconer
                                                Texas Bar No. 24069695
                                                RFalconer@gibsondunn.com
                                             GIBSON, DUNN & CRUTCHER LLP
                                             2001 Ross Ave., Suite 2100
                                             Dallas, TX 75201-2923
                                             Telephone: (214) 698-3100
                                             Facsimile: (214) 571-2936

                                             Kyle D. Hawkins
                                                Texas Bar No. 24094710
                                                Kyle@lehotskykeller.com
                                             LEHOTSKY KELLER LLP
                                             919 Congress Ave.
                                             Austin, TX 78701
                                             Telephone: (512) 436-3052
                                             Facsimile: (833) 233-2202

                                             ***Attorneys for Baylor University***

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on November 28, 2022, the foregoing document was electronically submitted with the clerk of the court for the United States District Court, Western District of Texas, using the electronic case file system of the court.  The electronic case file system sent a "Notice of Electronic Filing" to all counsel of record.

*/s/ Russ Falconer*
Russell H. Falconer