## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## WACO DIVISION

**ALLISON KING, JOSHUA ROOP,**
    *Plaintiffs,*

**v.**

**BAYLOR UNIVERSITY,**
    *Defendant.*

W:20-CV-00504-DC

## MEMORANDUM OPINION

The world started 2020 by helplessly watching COVID-19 burn through country after country around the globe. And soon after, the pandemic arrived in full force on the United States' shores. Uncertainty was the only thing certain as people prepared for the worst while hoping for the best. As a result, life was put on pause for many, including students when educational institutions moved to online learning. Baylor University was one such institution.

Baylor moved its classes online on March 16, 2020, three days after Texas Governor Greg Abbott declared a state of disaster in response to COVID-19. Swept up in Baylor's move to remote classes were Plaintiffs Allison King and Joshua Roop. Plaintiffs' sole claim against Baylor is simple: they expended thousands of dollars to attend Baylor in person, but when Baylor moved classes online, the rest of the Spring 2020 semester was a lesser product than what Plaintiffs paid for. Thus, Plaintiffs sued Baylor for breach of contract in late 2020.

Yet the questions presented here are bigger than a simple breach of contract claim. In June 2021, Governor Abbott signed the Pandemic Liability Protection Act ("PLPA") into law. In relevant part, the PLPA shields educational institutions like Baylor from monetary

liability arising from an institution's move to remote learning in response to the pandemic. The PLPA then, puts Plaintiffs' claim in jeopardy.

If the Act doesn't apply to Plaintiffs' claim or is unconstitutional, Baylor—and every other educational institution that moved to remote learning—becomes monetarily liable for seeking to protect students and faculty during an unprecedented health emergency. On the other hand, if the Act does apply and is constitutional as applied, Plaintiffs will be left holding any empty bag almost three years later. Although that outcome might be unfair; unfair does not always equal unconstitutional.

## BACKGROUND

When Plaintiffs enrolled in classes at Baylor for the Spring 2020 Semester, they signed a Financial Responsibility Agreement ("FRA"). In short, the FRA required Plaintiffs to pay Baylor as a condition of their enrollment for the semester, for which Plaintiffs would receive "educational services." This is the basis for Plaintiffs' claim: Plaintiffs contracted for "educational services, which in their opinion, means "in-person, on-campus" instruction. So when Baylor moved classes online, Plaintiffs claim that Baylor breached the FRA.

King sued Baylor in August 2020, alleging breach of contract and unjust enrichment.[1] After Baylor moved to dismiss King's claims, U.S. District Judge Alan Albright adopted the U.S. Magistrate Judge's Report and Recommendation and dismissed Plaintiff King's claims.[2] King appealed the decision to the Fifth Circuit. While the appeal was pending, the Texas Legislature passed the PLPA.[3] Three months after the PLPA's passage, the Fifth Circuit

---

[1] Doc. 28 at 18–27.
[2] Docs. 31, 55.
[3] Act of June 14, 2021, 87th Leg., R.S., ch. 528, 2021 Tex. Gen. Laws, S.B. 6, § 3 [hereinafter PLPA].

ruled on King's appeal, granting in part, and reversing in part the lower court's order, remanding the case for further proceedings on a potential ambiguity in the term "educational services."

After the remand, four things happened. First, the case was reassigned from Judge Albright in the Waco Division of the Western District of Texas to this Court in the Midland/Odessa Division.[4] Next, a Second Amended Complaint was filed, adding Roop to the case.[5] Third, Baylor moved to dismiss Plaintiffs' Second Amended Complaint for failure to state a claim.[6] Lastly, Plaintiffs gave notice to Texas Attorney General Ken Paxton of its challenge to the PLPA's constitutionality in late December 2022.[7] Thus, the 45 days for Texas to file briefing in support of the law have passed, and the Parties' motions are ripe to be adjudicated.

## LEGAL STANDARD

When a defendant moves to dismiss under Federal Rule of Civil Procedure 12(b)(6), the trial court must assess whether a complaint states a plausible claim for relief.[8] The court must accept "all well-pleaded facts in the complaint as true and viewed in the light most favorable to the plaintiff."[9] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[10]

---

[4] Doc. 62.
[5] Doc. 65.
[6] Doc. 66.
[7] Doc. 70.
[8] *See Raj v. La. State Univ.*, 714 F.3d 322, 329–30 (5th Cir. 2013) (citing *Bass v. Stryker Corp.*, 669 F.3d 501, 506 (5th Cir. 2012)).
[9] *See id.*
[10] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

On the other hand, if the complaint only offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," dismissal is appropriate.[11] "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."[12] The court should dismiss a complaint if the court can only infer the mere possibility of misconduct, or if the plaintiff has only alleged that he is entitled to relief rather than stating a claim that is "plausible on its face."[13]

## DISCUSSION

The Fifth Circuit remanded this case with instructions to consider "whether Baylor's or King's interpretation of 'educational services' prevails."[14] Specifically, the Fifth Circuit directed the district court to answer "whether Plaintiffs' interpretation of 'educational services' is reasonable and, if so, whether the term is latently ambiguous."[15] Also however, tucked in a footnote, the Fifth Circuit assigned a critical issue "for the district court in first instance"—whether the PLPA applies and is constitutional as applied to Plaintiffs' claim.[16]

In response to the "unprecedented public health emergency" caused by Covid-19, the Texas Legislature passed the PLPA to "establish[] certain procedures and standards for addressing potential claims against individuals and entities" like educational institutions.[17] To that effect, the PLPA provides that "[a]n educational institution is not liable for damages or equitable monetary relief arising from a cancellation or modification of a course, program, or activity of the institution if the cancellation or modification arose during a pandemic

---

[11] *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).
[12] *Shaw v. Villanneva*, 918 F.3d 414, 415 (5th Cir. 2019) (quoting *Iqbal*, 556 U.S. at 678).
[13] *Iqbal*, 556 U.S. at 678–79 (quoting *Twombly*, 550 U.S. at 570).
[14] *King v. Baylor Univ.*, 46 F.4th 344, 363 (5th Cir. 2022).
[15] *Id.*
[16] *Id.* at 355, n.4.
[17] PLPA § 4(c).

emergency and was caused, in whole or in part, by the emergency."[18] But this liability shield applies "only to an action commenced on or after March 13, 2020, for which a judgment has not become final before [June 14, 2021]."[19]

Baylor asserts that the PLPA bars Plaintiffs' breach of contract claim. Plaintiffs counter that the Act doesn't apply, and if it does, it is unconstitutional under the Texas and the United States Constitutions. Because the Fifth Circuit declined "to render an uninformed interpretation of the PLPA and leave that for the district court in first instance," this Court will first take up the PLPA's application and constitutionality.[20] Thus, the fate of Plaintiffs' breach of contract claim rests on the answers to three questions:

> (1) Does the PLPA apply to Plaintiffs' claims?
>
> (2) Is the PLPA constitutional under the Texas Constitution's Retroactivity Clause?
>
> (3) Is the PLPA constitutional under the Contracts Clause from both the Texas and United States Constitutions?

## I.   Does the Pandemic Liability Protection Act apply to Plaintiffs' claim?

Plaintiffs concede that Baylor is an "educational institution," and that the pandemic caused Baylor to modify its courses.[21] And that King sued Baylor after March 2020.[22] Plaintiffs, however, insist the PLPA is not applicable in this case, positing that the Waco district court entered a "final judgment" before June 14, 2021.[23] Because of that, Plaintiffs argue, the PLPA does not apply to Plaintiffs' claim.

---

[18] Tex. Civ. Prac. & Rem. Code Ann. § 148.004.
[19] PLPA § 5(a) (signed into law on June 14, 2021).
[20] *Id.*
[21] Doc. 65 at 2, 4.
[22] Doc. 1 (King's original complaint was filed June 5, 2020).
[23] Doc. 68 at 7–20.

The PLPA applies only to actions "for which a judgment has not become final" before June 14, 2021.[24] The district court dismissed King's claim and entered a final judgment two months before the PLPA's effective date.[25] According to Plaintiffs, the district court's prior dismissal constitutes "a final judgment," thus kicking their claim out from under the PLPA. To backstop that argument, Plaintiffs point to the law on appellate jurisdiction.

Federal law limits federal appellate courts' jurisdiction to review "final decisions of the district courts."[26] Put simply, Plaintiffs argue that because the Fifth Circuit can only hear appeals from "final judgments," and the Fifth Circuit heard Plaintiff King's first appeal, the district court's prior dismissal is exactly what the Texas Legislature meant by a "final judgment."[27]

Yet it's not that simple—what "final judgment" means in Texas law depends on the context. For example, the Texas Supreme Court has observed that a judgment disposing of all issues and parties in a case might be a "final judgment" for appellate jurisdiction.[28] But a "final judgment" could also mean when a trial or appellate court's "power to alter the judgment ends."[29] Or it could mean "when a judgment operates to finally vest rights as between the parties."[30] Or it could mean "when the judgment becomes operative for the purposes of res judicata."[31] So just because the district court's prior orders constituted a final

---

[24] PLPA § 5(a).
[25] Docs. 55, 56.
[26] 28 U.S.C. § 1291.
[27] Doc. 68 at 8–9.
[28] *E.g.*, *Hinde v. Hinde*, 701 S.W.2d 637, 639 (Tex. 1985).
[29] *Street v. Honorable Second Ct. of Appeals*, 756 S.W.2d 299, 301 (Tex. 1988)
[30] *Id.*
[31] *Id.*

judgment for federal appellate jurisdiction purposes doesn't mean that same interpretation applies for the PLPA.

This Court believes that the Texas Legislature intended "a judgment [that] has not become final" to mean judgments where the rights or obligations between the parties have not vested for three reasons. First, although Plaintiffs use "final judgment" as shorthand, there is a grammatical difference between "final judgment" and "a judgment [that] has not become final." The Texas Legislature used the present-perfect tense—"a judgment has not become final"—which denotes "an act, state, or condition that occurred at an unspecified time before now."[32] In other words, "a judgment" was entered sometime in the past, but in the present, that judgment is not yet final.

In contrast, simply stating a "final judgment" would mean "[a] court's last action that settles the rights of the parties and disposes of all issues in controversy, except for the award of costs (and, sometimes, attorney's fees) and enforcement of the judgment."[33] If the legislature wished to make the PLPA reflect that definition, it could have done so. Indeed, the Texas Legislature could have limited the PLPA only to actions *for which there is not a final judgment*. But it didn't. And it's a longstanding canon of statutory interpretation that grammatical structure reveals the legislature's intent.[34] So the Texas Legislature purposefully drafted a timeframe between "a judgment" and when that judgment is "final." Meaning, although the district court previously entered "judgment" on Plaintiffs' claim, merely entering that judgment does not automatically make it "final" under the PLPA.

---

[32] Bryan A. Garner, The Chicago Guide to Grammar, Usage, and Punctuation, 97 (2016).
[33] *Final Judgment*, Black's Law Dictionary 1008 (Bryan A. Garner ed., 11th ed. 2019)
[34] Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 140 (2012) (Grammar Canon).

Second, the Act's grammatical structure—allowing an entered judgment to become final and enforceable at a later point—also meshes with rules of procedure. For example, under Rule 62 of the Federal Rules of Civil Procedure, a district court's "final judgment" is automatically not enforceable for at least 30 days. That makes sense; a party has 30 days to file its appeal under the Federal Rules of Appellate Procedure.[35] So just like in the federal rules, an entered judgment in the PLPA's context would be final when the judgment becomes enforceable (vested) or the parties' right to appeal have been exhausted. Until that point, the issues would remain live, unvested, and appealable.

Lastly, it makes no logical sense to call this case "final." Plaintiffs' breach of contract claim is still in controversy in much the same form it was when King filed her first complaint. So much so that Plaintiffs' Second Amended Complaint—filed November 2022—is substantially the same as the amended complaint King filed in August 2020. In fact, after a side-by-side comparison, the Court found that little substance has changed, even after two years and an appeal to the Fifth Circuit. What's more, Roop joined this case after the Fifth Circuit's remand.[36] So the Court would find it strange for Roop to jump onboard a case he believes is "final."

In sum, the district court's dismissal and entry of final judgment did not stop this case from being a live case or controversy. And because the Parties' rights have not been exhausted, nor have their obligations vested, this case is still an action "for which a judgment has not become final." The PLPA, therefore, applies to Plaintiffs' claim.

---

[35] Fed. R. App. P. 4.

[36] Doc. 65.

## II.   Is the PLPA constitutional under the Texas Constitution's Retroactivity Clause?

Because the Act applies, Plaintiffs' arguments move to whether the PLPA is constitutional. Plaintiffs first constitutional attack posits that the PLPA violates the Texas Constitution's Retroactivity Clause.

The Texas Constitution simply states, "No . . . retroactive law . . . shall be made."[37] As defined by the Texas Supreme Court, "a retroactive law is one that extends to matters that occurred in the past."[38] The Retroactivity Clause enshrines a vital protection for citizens against legislative enactments that unfairly deprive them of legitimate expectations[39] Thus, there is a "heavy presumption" against retroactive laws.[40] And there's no question here that the PLPA is applied retroactively. As a result, the Court's begins the analysis with the PLPA facing a heavy presumption that it is unconstitutional.

That heavy presumption can be overcome, however, by a compelling public interest.[41] Yet balancing a compelling public interest against the heavy presumption against retroactive laws is no bright-line test. With that in mind, the Texas Supreme Court in *Robinson v. Crown Cork & Seal Co., Inc.,* laid out three factors for courts to consider when undertaking this balancing test:

> (1) the nature and strength of the public interest served by the statute as evidenced by the Legislature's factual findings,
>
> (2) the nature of the prior right impaired by the statute; and

---

[37] TEX. CONST. art. I, § 16.
[38] *Tenet Hosps. Ltd. v. Rivera*, 445 S.W.3d 698, 707 (Tex. 2014).
[39] *Owens Corning v. Carter*, 997 S.W.2d 560, 572 (Tex.1999) (citing *Landgraf v. USI Film Prods.*, 511 U.S. 244, 265 (1994)).
[40] *Robinson v. Crown Cork & Seal Co., Inc.*, 335 S.W.3d 126, 146 (Tex. 2010).
[41] *See Tex. Water Rights Comm'n v. Wright*, 464 S.W.2d 642, 648 (Tex. 1971).

(3) the extent of the impairment.[42]

This three-factor test "also appropriately encompasses the notion that 'statutes are not to be set aside lightly.'"[43] Indeed, there's a counter presumption that "the Legislature intended for the law to comply with the United States and Texas Constitutions, to achieve a just and reasonable result, and to advance a public rather than a private interest."[44] And even though the PLPA starts out facing the heavy presumption against retroactive laws, the presumption that the Legislature intended for the law to be constitutional appears resilient. The Texas Supreme Court has "only upheld constitutional retroactivity challenges four times."[45]

### A. The nature and strength of Plaintiffs' prior right.

Following the *Robinson* Court's analysis, this Court looks first at the nature of the right claimed by Plaintiffs—whether Plaintiffs had "settled expectations."[46] Plaintiffs claim they have a "well-settled common-law right to enforce contracts they negotiated and agreed upon and recover thousands of dollars expended in reliance on those contracts."[47] Put simply, Plaintiffs allege a right to pursue a common-law breach of contract claim.

The *Robinson* Court laid out three more factors to determine whether a plaintiff has "settled expectations": (1) the common-law claim had matured, (2) recovery was predictable, and (3) whether discovery had shown their claims to have a substantial basis in fact. On the first factor, it's not disputed that Plaintiffs' claims had matured; Plaintiffs sued Baylor for

---

[42] 335 S.W.3d at 146.
[43] *Tenet Hosps. Ltd.*, 445 S.W.3d at 707 (quoting *Robinson*, 335 S.W.3d at 146).
[44] *Tex. Mun. League Intergovernmental Risk Pool v. Tex. Workers' Comp. Comm'n*, 74 S.W.3d 377, 381 (Tex. 2002).
[45] *Tenant Hosps. LTD.*, 445 S.W.3d at 139.
[46] See *Union Carbide Corp. v. Synatzske*, 438 S.W.3d 39, 58 (Tex. 2014).
[47] Doc. 68 at 15.

breach of contract before the PLPA's effective date.[48] And on the third factor, the simple factual basis for Plaintiffs' claim doesn't leave much room for dispute. Baylor modified various activities because of the COVID-19 pandemic and Plaintiffs allege those modifications were in breach of contract. Thus, the major contention is whether Plaintiffs' recovery was "predictable."

*Predictability of Plaintiffs' potential recovery.*

Baylor points to *Hogan v. Southern Methodist University* from the Northern District of Texas to support its claim that Plaintiffs' recovery was not predictable.[49] There, a university student sued Southern Methodist University for much the same reasons Plaintiffs have sued Baylor.[50] Yet U.S. District Judge Brantley Starr shot down the student's breach of contract claim, reasoning that "Hogan's suit for a pro rata refund does not tie to clear precedent or an express contractual provision that would make it a slam-dunk contract case."[51]

This case, however, is distinguishable from *Hogan*. Hogan's claims were "unpredictable at best" because of the lack of discovery and his "inability to adjudicate these claims before the new law took effect."[52] In contrast, Plaintiffs in the case before this Court were adjudicating their claims at the district court and on appeal before the PLPA went into effect. So unlike in *Hogan*, Plaintiffs had an ability to adjudicate their live case and controversy before the PLPA's effective date.

Also distinguishable from *Hogan*, the Court would not use the phrase "a slam-dunk contract case" in this case under the predictable recovery prong. This Court sees nothing in

---

[48] Doc. 1 (King's original complaint was filed June 5, 2020).
[49] 595 F. Supp. 3d 559 (N.D. Tex. 2022).
[50] *Id.* at 562.
[51] *Id.* at 571.
[52] *Id.*

*Robinson* or its progeny that equates "predictable recovery" with a sure thing or a "slam dunk." In fact, it's likely a much lower bar. Indeed, the *Robinson* Court reasoned that an "unliquidated claim may have little or no value . . . when the cause of action has not been recognized or *the elements of recovery cannot be proved*."[53] So following that reasoning, it appears claims that *can* be proved—a possibility in other words—would have greater value.

This Court thinks viewing "recovery was predictable" as protecting only "slam dunk claims" doesn't make sense. The analysis should instead focus on whether "the elements of recovery [*can*] be proved for three reasons. First, the Texas Constitution's Retroactivity Clause protects "the people's reasonable, settled expectations" against "the abuses of legislative power."[54] That's why there is a presumption against retroactivity.[55] It would be strange then, for a court to afford constitutional protections only to claims with near-certain recovery prospects. Indeed, a "well-founded claim"—one "recognized or secured by law"—is a right.[56] And "the Retroactivity Clause 'must be held to protect every right . . . which may accrue under existing laws prior to the passage of any act which, if permitted a retroactive effect, would take away the right.'"[57] So limiting the Retroactivity Clause's protections to cases with near-certain recovery misses the point—especially at the motion to dismiss stage.

Second, in many cases, recovery is neither predictable nor unpredictable—it's merely possible. But in a few cases, recovery might be predictable because it's impossible. To illustrate, take the timing from *Hogan*. Hogan had an "inability to adjudicate these claims

---

[53] *Robinson*, 335 S.W.3d at 148 (emphasis added).
[54] *Id.* at 139 (citing *Landgraf v. USI Film Prods.*, 511 U.S. 244, 265–66 (1994) (cleaned up).
[55] *Id.* at 146.
[56] *Mellinger v. City of Houston*, 3 S.W. 249, 253 (1887).
[57] *Robinson*, 335 S.W.3d at 151–52 (Medina, J., concurring) (quoting *Mellinger*, 3 S.W. at 253).

before the new law took effect."[58] Thus, when Hogan sued, he could not prove one of the elements (monetary damages) to a breach of contract claim. In short, his recovery of monetary damages was not predictable because it wasn't possible.

In contrast, recovering monetary damages was still possible when Plaintiffs sued Baylor. To be sure, the Waco district court granted Baylor's Motion to Dismiss. But Plaintiffs also invested time and money into an appeal before the effective date. So while the case was pending before the Fifth Circuit, Plaintiffs recovery was neither predictable nor unpredictable—it was possible. Or how Judge Duncan's concurring opinion in the Fifth Circuit's remand described Plaintiffs' case: "plausible."[59]

Lastly, recovery in litigation is everything but predictable. Take this case: Baylor argues it is right, Plaintiffs argue they are. And round and round it goes. A quote from then-Justice Willett's concurrence in *Robinson* captures the sentiment perfectly:

> Litigants in our adversarial system are hard-wired for certitude, adept at insisting the law "clearly" or "plainly" favors their side or, as here, labeling the controlling analysis "straightforward and simple." If only.[60]

"If only" is right. The Court fears predicting recovery under a "slam dunk" standard—especially in cases like this one—would turn the Court into an umpire calling balls and strikes before the pitch is even thrown. Or even worse, an umpire deciding a game by enforcing a pitch clock.[61]

---

[58] *Id.*

[59] See *King v. Baylor Univ.*, 46 F.4th 344, 374 (5th Cir. 2022). (Duncan, J. concurring) ("So, to the extent these sources can elucidate the meaning of the FRA, they may show the parties plausibly bargained for 'educational services' that are on-campus.").

[60] *Robinson*, 335 S.W.3d at 159 (Willett, J., concurring).

[61] Dylan Svoboda, *New MLB pitch clock rule causes controversial end to Red Sox-Braves game*, N.Y. POST, Feb. 25, 2023, https://nypost.com/2023/02/25/mlb-pitch-clock-rule-causes-controversial-end-to-red-sox-braves/.

In sum, the Court will err on the side of protecting Plaintiffs against "the abuses of legislative power" by finding Plaintiffs' recovery was predictable because all the elements of Plaintiffs' recovery "plausibly" could be proved before the Act's effective date. Thus, because Plaintiffs had a well-founded claim, the Court holds that Plaintiffs had "settled expectations" in pursuing their common-law breach of contract claim.

### B.  How much does the PLPA impair Plaintiffs' settled expectations?

Yet just because Plaintiffs have "settled expectations" does not mean the PLPA is unconstitutionally retroactive. The issue thus becomes how much does the retroactive law impair those "settled expectations." And that is where Plaintiffs' problems begin; there is a longstanding distinction between a right and a remedy in Texas law, and "changes in the law that merely affect remedies . . . are usually not unconstitutionally retroactive."[62] Indeed, the Texas Supreme Court has consistently upheld laws since the mid-1800s using this "remedial exception"—laws affecting an accrued cause of action's remedy are not unconstitutionally retroactive unless the remedy is entirely taken away.[63]

Plaintiffs try to slip the kimura lock of that longstanding jurisprudence by claiming the PLPA is not merely remedial. For instance, Plaintiffs claim that the PLPA's shield completely impairs their settled expectations because "the provision extinguishes *any* claim for monetary relief . . ."[64] Well, sure. But a law extinguishing any *monetary* remedies does not

---

[62] *Robinson*, 335 S.W.3d at 146.
[63] *See*, *e.g.*, *De Cordova v. City of Galveston*, 4 Tex. 470, 479–80 (1849) ("Laws are deemed retrospective and within the constitutional prohibition which by retrospective operation destroy or impair vested rights or rights to 'do certain actions or possess certain things, according to the laws of the land,' but laws which affect the remedy merely are not within the scope of the inhibition unless the remedy be taken away altogether.").
[64] Doc. 68 at 15 (emphasis in original).

extinguish *all remedies*. So in effect, Plaintiffs argue that a monetary remedy is the only remedy for breach of contract.

But that's not true. A remedial right to monetary relief is just one of various "means of enforcing an existing substantive right."[65] For example, as Baylor points out in its briefing, the PLPA still leaves "available the possibility of injunctive, declaratory, or other nonmonetary relief."[66] Thus, the PLPA would fall under the "remedial exception" because it does not take away all of Plaintiffs' potential remedies. And "cutting off a right to certain remedies is not the same as barring a suit altogether."[67]

Plaintiffs counter that without monetary relief, they are left with "hollow remedies [] insufficient to preserve 'the primary rights of individuals.'"[68] The Court is sympathetic toward that point. It's not lost on the Court that Plaintiffs likely have no use for injunctive or declaratory relief at this point—Spring 2020 feels like forever ago. "But unfair does not always equal unconstitutional; even vested rights can be impinged if lawmakers have a good-enough reason."[69] For example, the Texas Supreme Court held in *City of Tyler v. Likes* that the retroactive statute was not unconstitutional because it "affected only a remedy, not a right, even though *a claimant would recover less or perhaps not at all*."[70]

In sum, Plaintiffs did have settled expectations when the PLPA became effective. And the PLPA does impair Plaintiffs' pursuit of monetary relief. But therein lies the rub.

---

[65] *Remedial*, Black's Law Dictionary 1547 (Bryan A. Garner ed., 11th ed. 2019).
[66] Doc. 66 at 11.
[67] *Hogan v. S. Methodist Univ.*, 595 F. Supp. 3d 559, 572 (N.D. Tex. 2022).
[68] Doc. 68 at 16 (quoting *Blonstein v. Blonstein*, 831 S.W.2d 468, 473 (Tex. App.—Houston [14th Dist.] ) *writ denied*, 848 S.W.2d 82 (Tex.1992).
[69] *Robinson*, 335 S.W.3d at 160 (Willett, J., concurring).
[70] *Robinson v. Crown Cork & Seal Co.*, 335 S.W.3d 126, 141 (Tex. 2010) (citing *City of Tyler v. Likes*, 962 S.W.2d 489, 502 (Tex. 1997) (emphasis added).

Texas courts have held for more than 150 years that laws affecting an accrued cause of action's remedy are not unconstitutionally retroactive unless the remedy is entirely taken away.[71] And this Court will not contradict such longstanding jurisprudence.

## III.  The nature and strength of the public interest served by the PLPA.

The Court must now balance the PLPA's remedial impairment of Plaintiffs' settled expectations against the nature and strength of the public interest it serves as evidenced by the legislature's factual findings.

In passing the PLPA, the Texas Legislature reasoned that the Act served "a compelling public interest in establishing certain procedures and standards for addressing potential claims against individuals and entities faced with an unprecedented public health emergency that has had severe and adverse impacts on both the health and safety of individuals and the ordinary functioning of . . . educational and religious institutions . . . and others whose daily lives have been upended by the emergency."[72]

What's more, the PLPA's House Report highlighted COVID-19's "onslaught" on Texas, noting how the virus "has strained the state's . . . educational institutions, and there are widespread concerns regarding the long-term effects of the pandemic on these sectors, including the effects of lawsuits that have already been filed in Texas and across the nation."[73] So the Texas Legislature's goal was quite clear; it expressly wanted to protect educational institutions from lawsuits stemming from such institutions' responses to COVID-19's impacts.

---

[71] *De Cordova v. City of Galveston*, 4 Tex. 470, 479–80 (1849).
[72] PLPA § 4(c).
[73] H.R. 87-26985, 87th Reg. Sess., at 1 (Tex. 2021).

Plaintiffs, however, characterize the legislature's findings as "thin," arguing that missing details should render any factual findings inadequate.[74] For instance, Plaintiffs innocently ask who could have raised such "widespread concerns" about potential lawsuits: was it "University administrators? Special interest groups? Lobbyists?"[75] Plaintiffs also question how serious such "concerns" were. The threat of lawsuits couldn't have been that serious, Plaintiffs muse, alluding that lawsuits like this one have not affected educational institutions' finances or ability to function in a substantial way. Or more to the point, Plaintiffs believe that "the apparent, and perhaps only possible, interest served by the provision is protecting *universities* from their duty to perform under their contracts with students . . ."[76] But even with such venal undertones, Plaintiffs' questions overlook a simple fact.

The PLPA applies to Texas's entire education system. Indeed, the PLPA not only shields universities like Baylor from damages, but also any "public or private preschool, child-care facility, primary or secondary school . . ."[77] The PLPA's language then, extends far beyond universities and higher education, also providing a shield for thousands, if not tens of thousands, of Texas schools and educational facilities.

Yet Plaintiffs assert that even though the PLPA's protections extend throughout Texas's educational system, the Act resembles the retroactive law held unconstitutional in *Robinson*. But by casting such a broad halo over many Texas educational facilities, the PLPA is a far cry from the retroactive law in *Robinson*. The law in *Robinson* benefitted only one

---

[74] Doc. 68 at 10.
[75] *Id.* at 11.
[76] *Id.* at 14 (emphasis added).
[77] Tex. Civ. Prac. & Rem. Code Ann. § 148.004.

company by reducing its asbestos litigation.[78] And the legislature provided zero factual findings to support that law.[79] Those deficiencies are not present in this case: the Texas Legislature found the COVID-19 pandemic threatened educational institutions and passed the PLPA to protect all Texas educational institutions and facilities, not just Baylor.

Plaintiffs also dispute that the legislature's interest in protecting Texas educational institutions from the pandemic's long-term effects is not "a compelling public interest sufficient to overcome" the "heavy presumption against retroactive laws."[80] This Court disagrees for four reasons.

First, Texas courts have recognized that Texas has an "unarguably compelling public purpose . . . in ensuring that its citizens are educated."[81] The Texas Constitution also enshrines Texas's interest in education.[82] As noted above, the PLPA encompasses Texas's entire education system.[83] So when faced with an unprecedented crisis, the Texas Legislature was rightfully concerned that the pandemic's long-term effects—which included the threat of lawsuits—would grind the educational system to a halt. Thus, the PLPA furthers Texas's compelling interest in ensuring that its citizens are educated by shielding the education system from destabilizing byproducts.

Second, Texas has a compelling interest in promoting public health and safety. The United States Constitution "entrusts '[t]he safety and the health of the people' to the

---

[78] 335 S.W.3d 126, 149–50 (Tex. 2010).

[79] *Id.*

[80] Doc. 68 at 10.

[81] *Tex. Educ. Agency v. Am. YouthWorks, Inc.*, 496 S.W.3d 244, 264 (Tex. App.—Austin 2016) (Rose, C.J.), *aff'd sub nom. Honors Acad., Inc. v. Tex. Educ. Agency*, 555 S.W.3d 54 (Tex. 2018)

[82] *See, e.g.*, TEX. CONST. art. 7. Sec. 1

[83] Tex. Civ. Prac. & Rem. Code Ann. § 148.004.

politically accountable officials of the States.'"[84] Likewise, a state has broad latitude when acting "in areas fraught with medical and scientific uncertainties."[85] Its undeniable that COVID-19 presented many uncertainties in Spring 2020. And this Court will not "second guess" a public health decision made by a super-majority of elected officials "faced with an unprecedented public health emergency that has had severe and adverse impacts on both the health and safety of individuals and the ordinary functioning of . . . educational and religious institutions . . . and others whose daily lives have been upended by the emergency."[86]

Third, the Texas Supreme Court has upheld retroactive laws that address a crisis impacting wide swaths of the population. For example, the Texas Supreme Court in *Tenet Hospitals Ltd. v. Rivera* upheld a retroactive law similar to the PLPA because it addressed a crisis with a widespread effect. In *Tenet*, the Texas Legislature had enacted a statute of repose for healthcare liability claims while overhauling Texas's medical malpractice law.[87] In upholding the statute of repose's retroactive application, the *Tenet* Court noted that "[u]nlike the statute in *Robinson*, there is no indication the statute here was to benefit only a particular entity; rather, it was aimed at broadening access to health care by lowering malpractice insurance premiums."[88] Indeed, "the Legislature expressly found that a spike in healthcare liability claims was causing a malpractice insurance crisis that adversely affected the provision of healthcare services in Texas."[89] In other words, the retroactive law made health care more

---

[84] *S. Bay United Pentecostal Church v. Newsom*, 140 S. Ct. 1613, 1613 (2020) (Roberts, C.J., concurring) (quoting *Jacobson v. Massachusetts*, 197 U.S. 11, 38, (1905)).
[85] *Id.* (Roberts, C.J., concurring) (quoting *Marshall v. United States*, 414 U.S. 417, 427 (1974).
[86] PLPA § 4(c).
[87] *Tenet Hosps. Ltd. v. Rivera*, 445 S.W.3d 698, 707 (Tex. 2014).
[88] *Id.*
[89] *Id.*

accessible, affordable, and available to the citizens of Texas.[90] Thus, the *Tenet* Court found there was a compelling public interest.[91]

The PLPA operates like the retroactive law in *Tenet*. The PLPA does not single out one institution or even a class of institutions, like universities. Rather, the Act protects all institutions and facilities responsible for educating millions of Texans.

Plaintiffs push back on that view, however, asserting that unlike the law in *Tenet*, the PLPA lacks a "tight fit between the crises identified and the means employed to address those crises."[92] The Court disagrees: the PLPA is still narrowly tailored even with such a diverse group of beneficiaries. For example, the Act bars two types of recovery ("damages or equitable monetary relief"), for claims stemming from two specific actions ("a cancellation or modification of a course, program, or activity") that occurred during a limited period ("arose during a pandemic emergency") that were caused by a single emergency ("caused, in whole or in part, by the [pandemic] emergency"). What's more, the PLPA applies "only to an action commenced on or after March 13, 2020"—the same date that Governor Abbott declared a state of disaster.[93]

Lastly, it's no small point that Texas law mandated that schools close and remain closed for the rest of Spring 2020.[94] Laws are enforced mainly through threats, monetary

---

[90] *Id.*

[91] *Id.* at 707–08.

[92] Doc. 68 at 14.

[93] *See* Proc. No. 9994, 85 Fed. Reg. 15,337, 2020 WL 1272563 (Mar. 13, 2020); Tex. Proc. of Mar. 13, 2020, https://gov.texas.gov/uploads/files/press/DISASTER_covid19_disaster_proclamation_IMAGE_03-13-2020.pdf.

[94] *See* Tex. Exec. Order No. GA-08 (Mar. 19, 2020), EO-GA_08_COVID-19_preparedness_and_mitigation_FINAL_03-19-2020_1.pdf (texas.gov) ("In accordance with the Guidelines from the President and the CDC, schools shall temporarily close."); Tex. Exec. Order No. GA-16, at 4 (April 17, 2020), EO-GA-16_Opening_Texas_COVID-19_FINAL_04-17-2020.pdf ("In accordance with the

fines, or physical compulsion. So by mandating schools close or remain closed, Texas placed educational institutions in a "pick your poison" scenario. On one hand, educational institutions would incur the wrath of state and local governments if they stayed open with in-person learning. But on the other was the looming threat of lawsuits (like this one) if educational facilities closed or modified their activities. Texas then, logically would have an interest in shielding educational situations from the liability created by those institutions obeying Texas law.[95] That's not merely this Court's conjecture; the State of Texas's brief in *Hogan* says exactly that:

> "[the PLPA] permits educational institutions at all levels to continue minimizing student exposure by making modifications to in-person learning in response to pandemic conditions and site-specific pandemic exposure without fear of being saddled with large money judgments from lawsuits directly targeting the safety measures implemented by the schools."[96]

In sum, the PLPA serves a compelling interest in protecting educational institutions from the long-term effects of an unprecedented global pandemic. And that compelling interest becomes even more apparent when balanced against the Act's slight, remedial impairment of Plaintiffs' settled expectations. Thus, because of the compelling nature of the public interest served by the PLPA, and because the Act's remedial impairment did not greatly upset Plaintiffs' settled expectations, the Court holds the PLPA constitutional under the Texas Constitution's Retroactivity Clause as applied to Plaintiffs.

---

Guidelines from the President and the CDC, schools shall remain temporarily closed to in-person classroom attendance by students and shall not recommence before the end of the 2019-2020 school year.").

[95] Tex. Gov't Code § 418.012 (Governor Abbott's executive orders issued under the Texas Disaster Act have the force and effect of law).

[96] Brief for the State of Texas as Amicus Curiae on the Constitutionality of the Pandemic Liability Protection Act's Educational Institution Provision, *Hogan v. S. Methodist Univ.*, 595 F. Supp. 3d 559 (N.D. Tex. 2022) (No. 3:20-CV-02899).

IV.    **Is the PLPA constitutional under the Contracts Clause of the Texas and United States Constitutions?**

Plaintiffs also argue the PLPA violates the Contracts Clause in both the Texas Constitution and the United States Constitution. Although both clauses have similar text, the Court will analyze them separately.

### A.  Texas Constitution's Contracts Clause.

The Texas Constitution provides that "No . . .law impairing the obligation of contracts, shall be made."[97] Plaintiffs present two arguments. First, Plaintiffs assert that "the Legislature has no authority to impair existing contracts except when the state's exercise of police power incidentally impairs contracts."[98] Second, even if an exercise of Texas's police power, the PLPA "is still invalid because it *directly* impairs Plaintiffs' and the putative class's contractual rights."[99] Those arguments, however, omit a key phrase.

The Texas Contracts Clause does not prohibit laws that impair contract rights or contracts in general. Rather, it prohibits laws impairing the "*obligations* of contracts." So that raises two important questions: what are "obligations of contracts," and can a remedy be one? Almost a century ago in *Langever v. Miller*, the Texas Supreme Court stated that an "obligation of the contract consists in the power and efficacy of the law, which applies to, and enforces performance of, the contracts, or the payment of an equivalent for non-performance."[100] Put simply, "the obligation of a contract is the law which binds the parties to perform their agreement."[101]

---

[97] TEX. CONST. art. I, § 16.
[98] Doc. 68 at 19.
[99] *Id.*
[100] 76 S.W.2d 1025, 1030 (1934).
[101] *Id.* (citing *Sturges v. Crowninshield*, 17 U.S. 122, 132 (1819)).

And "nothing is more material to the obligation of a contract than the means of its enforcement." A remedy then, can become an obligation when it functions as a contract's enforcement mechanism. But a remedy's mere existence in some form doesn't make it an enforcement mechanism, therefore an "obligation." So when does it become one? Simple— when the remedy has been made part of the contract.

For instance, the Texas Supreme Court reasoned less than 20 years after the Contract Clause was enshrined in the Texas Constitution that strictly remedial statutes unconstitutionally impair the obligations of a contract "where the parties make legal remedies a subject to their contract."[102] Indeed, if the legislature could take away specific remedies contracted for, it "would concede to the legislature a power to make a new contract, and destroy the old altogether."[103] But that's not the case here.

The FRA does not provide for monetary relief if Baylor breaches. So because Plaintiffs did not contract for it, monetary relief is not a "obligation" in the FRA. Texas courts have long upheld remedial laws in "cases in which the parties have not contracted about the subject-matter to which the laws were applicable."[104] And in that same vein, the Texas Supreme Court has stated that it does "not gainsay the proposition that the Legislature may change judicial methods and remedies for the enforcement of contracts. That is a rule of universal acceptation."[105] Thus, because the PLPA's remedial limitations do not impair any obligations enumerated in the FRA, the Act is constitutional under the Texas Constitution's Contract Clause as applied to Plaintiffs' claim.

---

[102] *Int'l Bldg. & Loan Ass'n v. Hardy*, 26 S.W. 497, 500 (1894).
[103] *Id.*
[104] *Id.*
[105] *Langever*, 76 S.W.2d at 1028.

**B.  United States Constitution's Contracts Clause.**

The Contract Clause of the United States Constitution provides that "No State shall . . . pass any . . . Law impairing the Obligation of Contracts."[106] But like under the Texas Constitution's Contracts Clause, "not all laws affecting pre-existing contracts violate the Clause."[107] Indeed, the U.S. Supreme Court "has long applied a two-step test" to determine whether a state law crosses the constitutional line. First, a court must determine whether the state law "has operated as a substantial impairment of a contractual relationship." To answer that "threshold" question, the Court should consider "the extent to which the law undermines the contractual bargain, interferes with a party's reasonable expectations, and prevents the party from safeguarding or reinstating his rights."[108] Like a call and response, the severity of impairment sets the threshold's height.[109] Indeed, severe impairments require a closer look, but a "[m]inimal alteration of contractual obligations may end the inquiry at its first stage."[110]

Unfortunately for Plaintiffs, the PLPA does not even "minimally alter" the Parties' contractual obligations. As the Court reasons above, the FRA is silent on Plaintiffs' monetary relief, thus creating no such "contractual obligation." And if monetary relief is not a part of the Parties' contractual relationship, the PLPA does not "substantially impair" that contractual relationship.[111].

---

[106] U.S. CONST. art. I, § 10, cl. 1.
[107] *Sveen v. Melin*, 138 S. Ct. 1815, 1821 (2018).
[108] *Id.*
[109] *Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234, 244 (1978).
[110] *Id.*
[111] *Id.*

Although the Court's inquiry could end here, this Court also reasons that even if the PLPA somehow impaired the contractual relationship, Plaintiffs cannot overcome the next step. Under the test's second step, if a substantial impairment exists, the court should move to "whether the state law is drawn in an 'appropriate' and 'reasonable' way to advance 'a significant and legitimate public purpose.'"[112] The Court has already laid out the PLPA's many compelling interests above. So in short, the PLPA does not violate the Contracts Clause of the United States Constitution.

## V.   Plaintiffs' breach of contract claim is barred by the PLPA.

Because the PLPA applies and is constitutional as applied, the fate of Plaintiffs' breach of contract claim is apparent. To succeed on a breach of contract claim under Texas law, Plaintiffs must prove there was a (1) valid contract (2) where Plaintiffs performed, (3) but Baylor breached, (4) and that Baylor's breach damaged Plaintiffs.[113] But the PLPA bars the monetary damages Plaintiffs seek, thus Plaintiffs' Complaint does not state a plausible claim for relief. Accordingly, Plaintiffs' breach of contract claim must be dismissed.

## CONCLUSION

The early stages of the COVID-19 pandemic created a fog of war, forcing institutions to quickly make life-altering decisions in unpredictable situations. In a flash, Baylor was forced to juggle health, safety, students' education, liability, and legal compliance—all while blindfolded. Texas recognized this plight, passing the PLPA to protect Texas's entire education system from monetary liability for actions those institutions took to protect their students and faculty while following Texas law.

---

[112] *Sveen*, 138 S. Ct. at 1822.
[113] *Villarreal v. Wells Fargo Bank, N.A.*, 814 F.3d 763, 767 (5th Cir. 2016) (applying Texas law).

Now one could argue, like Plaintiffs do, that shielding universities from monetary liability from suits already in progress isn't fair. The Court doesn't disagree. But the tests for whether the PLPA is constitutional in this case go deeper than "fairness." Indeed, as the Court reasons above, the PLPA protects compelling public interests through a narrowly tailored shield against only monetary remedies. And that is enough to bar Plaintiffs' claim.

It is therefore **ORDERED** that Defendant's Motion to Dismiss Plaintiffs' Second Amended Complaint be **GRANTED**. (Doc. 66).

It is so **ORDERED**.

SIGNED this 11th day of March, 2023.

_____
DAVID COUNTS
UNITED STATES DISTRICT JUDGE